1
Philip R. Higdon (#003499)
2
Craig A. Morgan (#023373)
Rhonda L. Barnes (#023086)
3
Aaron S. Welling (#024840)
Harmony A. Simmons (#025298)
4
PERKINS COIE BROWN & BAIN P.A.
5
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
6
Telephone:  602.351.8000
7
Facsimile:  602.648.7000
docketphx@perkinscoie.com
8
Attorneys for Plaintiff James A. Payne
9
UNITED STATES DISTRICT COURT
10
DISTRICT OF ARIZONA
11

12
James A. Payne, an individual,

13
                   Plaintiff,

14
      v.

15
Joseph Arpaio, Maricopa County Sheriff, and Ava
16
Arpaio, his wife; Maricopa County Sheriff's
Department, a county agency; Maricopa County, a
17
political subdivision; Fulton Brock, in his official
capacity as Maricopa County Supervisor; Don Stapley,
18
in his official capacity as Maricopa County
19
Supervisor; Andy Kunasek, in his official capacity as
Maricopa County Supervisor; Max Wilson, in his
20
official capacity as Maricopa County Supervisor;
21
Mary Rose Wilcox, in her official capacity as
Maricopa County Supervisor; Maricopa County
22
Correctional Health Services, a county agency; The
State of Arizona; The Arizona Department of
23
Corrections, a state agency; and Does 1 through 100,
24
                 Defendants.
25

26

No.

**COMPLAINT**

**(NEGLIGENCE; 42 U.S.C.
§§ 1983 & 12132)**

Plaintiff James A. Payne alleges for his complaint as follows:

## THE PARTIES

### *The Plaintiff*

1.      Plaintiff James A. Payne is an Arizona resident, residing in Yavapai County, Arizona.

### *The State of Arizona*

2.      Defendant the State of Arizona is, and at all times relevant hereto was, a political body, owns and operates, either directly or through contracted companies and/or agencies, certain state prisons within its borders and is the governmental entity with ultimate authority and control over conditions, and the medical care and treatment, and services, within the state prison system.

3.      Defendant the Arizona Department of Corrections ("ADOC") is, and at all times relevant hereto was, an Arizona state agency that is responsible for operating and maintaining Arizona's prisons, including their conditions and the medical care and treatment, programs, and services, within the state prison system.

4.      The Defendants named in paragraphs 2 and 3 are legally responsible, in whole or in part, for ADOC's operations and conditions.

### *Maricopa County*

5.      Defendant Maricopa County is, and at all times relevant hereto was, an Arizona political subdivision, owns and operates Maricopa County's jails, and is the governmental entity with the ultimate authority and control over the conditions, and the medical care and treatment, programs, activities, and services within its jails.

6.      Defendant Joseph Arpaio is, and at all times relevant hereto was, the Sheriff of Maricopa County and exercises administrative control of and responsibility for, and oversees, Maricopa County's jails, including its conditions, and the medical care and treatment, programs, activities, and services within its jails.   Ava Arpaio is Joseph

Arpaio's spouse and is being named as a Defendant in this action solely because of her membership in the marital community of Joseph and Ava Arpaio.

7.    Defendant Maricopa County Sheriff's Department is, and at all times relevant hereto was, a Maricopa County agency that is responsible for operating and maintaining Maricopa County's jails, including its conditions, and the medical care and treatment, programs, activities and services within its jails.

8.    Defendant Maricopa County Correctional Health Services is, and at all times relevant hereto was, a Maricopa County agency that is responsible for providing medical care and treatment, programs, activities and services to inmates incarcerated in Maricopa County's jails.

9.    Defendants Fulton Brock, Don Stapley, Andy Kunasek, Max Wilson, and Mary Rose Wilcox (collectively the "Supervisors") are members of the Maricopa County Board of Supervisors, empowered by Maricopa County with ultimate authority and control over conditions within Maricopa County's jails and the medical care, treatment, and services provided therein.    The Supervisors are named herein in their official capacities as members of the Maricopa County Board of Supervisors.

10.    The Defendants named in paragraphs 5 through 9 are legally responsible, in whole or in part, for the operations of and conditions in Maricopa County's jails, including its provision of medical care and treatment, programs, activities and services to inmates incarcerated in Maricopa County's jails.

***Other Defendants***

11.    Mr. Payne is unaware of the true names of those Defendants named herein as Does 1 through 100 inclusive, and hereby seeks leave of this Court to allege their true identities after they have been discovered, as though they had been correctly identified herein.

1   12.   Mr. Payne is informed and believes, and on that basis alleges, that each of

2   the Defendants named herein as Does 1 through 100 inclusive are in some manner

3   responsible for Mr. Payne's injuries and that Mr. Payne has claims against them, as set

4   forth below.

5   13.   All Defendants named herein committed the actions complained of for

6   their personal benefit, for the benefit of all other Defendants, and for the benefit of their

7   marital community (if any and as applicable).

8   **JURISDICTION AND VENUE**

9   14.   This case arises, in part, under 42 U.S.C. §§ 1983 and 12132, and

10  therefore this Court has jurisdiction over these federal questions pursuant to 28 U.S.C.

11  § 1331.

12  15.   This Court has supplemental jurisdiction over the remaining claims in this

13  matter pursuant to 28 U.S.C. § 1367(a).

14  16.   On or around January 20, 2009, Plaintiff James A. Payne delivered a

15  Notice of Claim (the "Notice of Claim"), pursuant to A.R.S. § 12-821.01, to the Maricopa

16  County Sheriff's Office, Maricopa County Board of Supervisors, Maricopa County

17  Correctional Health Services, Arizona Department of Corrections, and Office of the

18  Arizona Attorney General.  A true and correct copy of the Notice of Claim is attached

19  hereto as Exhibit 1.

20  17.   None of the recipients of the Notice of Claim responded to the Notice of

21  Claim within the timeframe set forth in A.R.S. § 12-821.01.

22  18.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because

23  (i) all of Defendants reside in, and may be found and served in, the District of Arizona;

24  and (ii) all of the events or omissions giving rise to these claims arose in the District of

25  Arizona.

26

# GENERAL ALLEGATIONS

19.     This action concerns Defendants' deliberate indifference and negligent failure to provide Mr. Payne with constitutionally adequate medical care, supervision, and treatment for his chronic disease while incarcerated under Defendants' care and supervision.

20.     In 1983, Mr. Payne was diagnosed with Type I diabetes, which is a serious, chronic disease, and qualifies as a disability pursuant to the Americans with Disabilities Act of 1990.

21.     Mr. Payne successfully managed and controlled his chronic disease until he was incarcerated and placed under the supervision of (i) Maricopa County, through Maricopa County Sheriff Joseph Arpaio, the Maricopa County Sheriff's Department, Maricopa County Correctional Health Services, the Supervisors, and certain individuals named herein as Does 1 through 100 (referred to collectively as "Maricopa County Law Enforcement") at one or more of Maricopa County Law Enforcement's jails; and (ii) the State of Arizona, through ADOC in its Arizona State Prison Complex in Florence, Arizona facility ("ASPC Florence") and certain individuals named herein as Does 1 through 100 (collectively, the "ADOC Defendants").

22.     Mr. Payne was incarcerated under the care and supervision of Maricopa County Law Enforcement between April and July 2001, and September 2001 and April 2002, and again in September 2002.

23.     Mr. Payne was incarcerated under the care and supervision of the ADOC Defendants between April and September 2002, and between September 2003 and September 2007.

24.     Defendants' failure to provide Mr. Payne with constitutionally adequate medical care and treatment while incarcerated under Defendants' care and supervision was negligent, deliberately indifferent and constituted (i) cruel and unusual punishment in

1  violation of the 8th Amendment to the United States Constitution, Article 2, § 15 of the

2  Arizona State Constitution and 42 U.S.C. § 1983; and (ii) violated Mr. Payne's right to

3  due process pursuant to the Fourteenth Amendment to the United States Constitution,

4  Article 2, § 4 of the Arizona State Constitution, and 42 U.S.C. § 1983.

5    25.    Defendants discriminated against Mr. Payne based on his chronic disease,

6  depriving him of the benefits of Maricopa County Law Enforcement's and the ADOC

7  Defendants' services, programs and activities while incarcerated.

8    26.    As a result of Defendants' negligence, deliberate indifference and

9  unconstitutional actions, Mr. Payne suffers from an array of serious physical and mental

10 ailments, many of which are irreversible and have left Mr. Payne totally and permanently

11 disabled and unemployable.

12   27.    Mr. Payne did not discover, and could not have discovered, the extent of

13 the serious mental and physical injuries described herein until after his release from

14 Defendants' custody and his receipt of treatment, evaluation, and diagnosis from

15 competent medical professionals unaffiliated with Defendants.

16                        ***Mr. Payne's Incarceration History***

17   28.    In or around April 2001, Mr. Payne was arrested and placed under

18 Maricopa County Law Enforcement's care and supervision at its Durango jail facility

19 ("Durango").

20   29.    Shortly thereafter, Mr. Payne was transferred to Maricopa County Law

21 Enforcement's Madison Street jail facility ("Madison").

22   30.    Mr. Payne remained in Madison until July 10, 2001, when he was

23 sentenced to probation and released.

24   31.    In or around September 2001, because of his failure to report to his

25 probation officer after attending his father's funeral, Mr. Payne was arrested and returned

26 to Madison.

32.    Mr. Payne remained at Madison until approximately April 2002, when Mr. Payne was sentenced to prison for his probation violation and transferred to ADOC's ASPC Florence facility.

33.    Mr. Payne remained at ASPC Florence until approximately September 2002, when he was transferred back to Madison on a detainer for (i) new charges related to his incarceration and (ii) another charge related to the facts and circumstances surrounding the incident resulting in Mr. Payne's first sentence.  Mr. Payne was released on bond approximately thirty days after he returned to Madison.  The new charges were dismissed.

34.    In September 2003, Mr. Payne received a second sentence based on the facts and circumstances surrounding the incident that resulted in his first sentence.

35.    After receiving the second sentence, Mr. Payne was returned to ASPC Florence, where he remained until his release in September 2007.

***Maricopa County Law Enforcement Failed To Provide Mr. Payne With Constitutionally Adequate Medical Care and Discriminated Against him Based on his Chronic Disease and Disability***

36.    Maricopa County Law Enforcement had a duty to, but did not, provide Mr. Payne the basic, minimum constitutional standard of medical care and treatment necessary to manage his chronic disease and disability and denied him the benefits of their services, programs and activities while incarcerated.

37.    Maricopa County Law Enforcement's negligent, deliberately indifferent and unconstitutional mistreatment of Mr. Payne exacerbated his chronic disease and disability, and caused him irreversible physical and psychological damage, rendering him totally and permanently disabled and unemployable.

38.     Under Maricopa County Law Enforcement's care and treatment, Mr. Payne's obvious diabetic symptoms—*e.g.*, lethargy and unconsciousness—often went ignored or were met with violence instead of medical treatment.

39.     Consistent with their pattern of past conduct, Maricopa County Law Enforcement failed properly to assess Mr. Payne's medical condition and needs when he came under their care.

40.     For persons with diabetes, a consistent insulin dosage and food intake regime is critical.

41.     Persons with diabetes are supposed to eat within thirty minutes of receiving insulin to maintain an appropriate blood-sugar level.

42.     Upon information and belief, Sheriff Joseph Arpaio was aware that conditions at the Maricopa County jails were likely to create a substantial risk of serious harm to inmates.

43.     Upon information and belief, Sheriff Joseph Arpaio was aware that some inmates would suffer serious harm if not provided adequate medical and dietary care.

44.     Upon information and belief, Maricopa County Law Enforcement was aware that persons with diabetes must ingest a special diabetic diet so as to maintain a consistent carbohydrate-to-insulin ratio and avoid a hypoglycemic or hyperglycemic episode.

45.     Defendant Sheriff Joseph Arpaio is the final policy maker for the Maricopa County jails.

46.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, Mr. Payne was refused medical care and treatment while suffering severe hypoglycemic and hyperglycemic episodes where he was unable to give a "coherent response" to prove he was in distress, although the lack of medical care and treatment for his chronic disease and disability prohibited him from giving such a response.

47.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, Mr. Payne was not permitted to monitor his blood sugar level with the minimum frequency necessary to effectively manage and control his chronic disease.

48.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, the timing of Mr. Payne's morning and evening insulin injections was unpredictable, making adequate blood-sugar control through regulated food intake after an insulin injection next to impossible.

49.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, Mr. Payne had difficulty obtaining food and insulin within the appropriate timeframe so as to prevent the unsafe fluctuation of his blood sugar.

50.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, when Mr. Payne was able to follow his insulin injection with food intake, the food-to-insulin ratio Maricopa County Law Enforcement provided was usually insufficient and the food was often moldy, rotten, riddled with insects, and of great significance to a diabetic, contained a wide variation of carbohydrates, the effect of which was to alter Mr. Payne's blood sugar to dangerous and unhealthy levels.

51.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, Mr. Payne was eventually prescribed, but did not always receive, a "diabetic" diet.

52.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, on or around October 17, 2003, Mr. Payne's diabetic diet was ordered discontinued.

53.     Due to Maricopa County Law Enforcement policies, procedures, customs or practices, Mr. Payne often received the incorrect dosage of insulin necessary to control and manage his chronic disease and his blood sugar levels would often fluctuate between extremely unhealthy ranges as high as 600 and as low as 17.

54.     Instances of Maricopa County Law Enforcement's negligent, deliberately indifferent, unconstitutional, and discriminatory conduct, all based on Maricopa County Law Enforcement policies, procedures, customs or practices, include but are not limited to:  refusing to provide Mr. Payne with his prescribed dosage of medicine because the nurse "did not have enough time" in which to do so, concluding that "medical will work with detention to bring Mr. Payne to medical if [a] nurse is unable to go up to the level"; Sheriff's Deputies refusing to check on Mr. Payne while he suffered severe diabetes-related episodes and instead requiring a nurse to record that Mr. Payne had refused medical treatment and to attend his court hearing; refusing to address Mr. Payne's concerns regarding his chronic disability and disease despite the Jail Commander's and other Maricopa County Law Enforcement employees' knowledge that Mr. Payne often "crashed due to low blood sugar causing him to be in an incoherent/confused state"; Sheriff's Deputies addressing Mr. Payne's concerns and complaints regarding Maricopa County Law Enforcement's failure to adequately care for his chronic disability and disease with life-threatening hostility.

55.     After being released from incarceration and obtaining sufficient medical care, Mr. Payne learned in late 2008, for the first time, that the aforementioned occurrences during his incarceration with Maricopa County Law Enforcement resulted in his current physically disabled condition, cognitive decline, and his total and permanent disability and unemployability.

***The ADOC Defendants Failed to Provide Mr. Payne with Constitutionally Adequate Medical Care and Discriminated Against Him Based on His Chronic Disease and Disability***

56.     The ADOC Defendants had a duty to, but did not, provide Mr. Payne the basic, minimum constitutional standard of medical care and treatment necessary to manage his chronic disease and disability, and denied him the benefits of the services, programs and activities to which he was eligible while incarcerated.

57.     The ADOC Defendants' deliberate indifference, unconstitutional and negligent mistreatment of Mr. Payne's chronic disease exacerbated his illness and caused him irreversible physical and psychological damage, rendering him totally and permanently disabled and unemployable.

58.     The ADOC Defendants' failure to provide Mr. Payne with the basic, minimum constitutional standard of medical care and treatment necessary to manage his chronic disease and disability continued throughout Mr. Payne's incarceration with the ADOC Defendants.

59.     Mr. Payne routinely exhibited symptoms of hypoglycemia and hyperglycemia while under the ADOC Defendants' care and supervision.

60.     Shortly after arriving at ASPC Florence, Mr. Payne was given his first physical exam at which the examiner apparently concluded that Mr. Payne was not a person with diabetes (although Mr. Payne had been diagnosed with diabetes two decades earlier).

61.     Requests for something as simple as glucose tablets—sugar tablets designed to enable a person with diabetes to control sudden blood sugar fluctuations— were denied contrary to the ADOC Defendants' policy.

62.     At one point, Mr. Payne was told that because the ADOC Defendants failed to pay for glucose tablets, there would be no tablets to distribute.

63.     When Mr. Payne did receive glucose tablets, the dosage given was often insufficient to provide any health benefit.

64.     The ADOC Defendants were aware that persons with diabetes must ingest a specially prepared diabetic diet so as to maintain a consistent carbohydrate-to-insulin ratio and avoid a hypoglycemic or hyperglycemic episode.

65.     The ADOC Defendants purport to provide persons with diabetes with a "diabetic meal card" entitling such persons to receive a special medical diet so as to enable those persons to avoid dangerous fluctuations in their blood sugar.

66.     Despite its medical necessity, Mr. Payne was initially denied a "diabetic meal card" that was required in order for him to receive the proper nutrition necessary to manage and control his chronic disease and disability.

67.     Mr. Payne did not receive a "diabetic meal card" for approximately a year.

68.     During the time in which Mr. Payne did not have his "diabetic meal card," because of unsafe blood-sugar fluctuations, Mr. Payne often suffered episodes of intense anxiety and plunged into unconsciousness.

69.     The ADOC Defendants failed to provide Mr. Payne with food and insulin within the appropriate timeframe so as to prevent the unsafe fluctuation of his blood sugar.

70.     The timing of Mr. Payne's morning and evening insulin injections were unpredictable, making adequate blood sugar control through regulated food intake after an insulin injection next to impossible.

71.     Even when Mr. Payne was able to follow his insulin injection with food intake, the food-to-insulin ratio was usually incorrect and unhealthy.

72.     Mr. Payne's meals often contained a fluctuating carbohydrate content, resulting in an unsafe elevation in his blood sugar and causing numerous hyperglycemic episodes.

73.     While under the ADOC Defendants' care and supervision, Mr. Payne's blood-sugar level was rarely within medically acceptable ranges.

74.     While under the ADOC Defendants' care and supervision, Mr. Payne had blood sugar levels as low as 9 and as high as over 400.

75.    Acceptable range for Hemoglobin Alc levels for people with diabetes is between 4.5%-5.7% and a range of <7% is considered optimal.

76.    On one occasion Mr. Payne's laboratory test results revealed that he had a Hemoglobin Alc level of 9.2%.

77.    The ADOC Defendants knew, but deliberately disregarded, the fact that Mr. Payne's high Hemoglobin Alc levels posed a "[h]igh risk of developing long term complications such as retinopathy, nephropathy, neuropathy, cardiopathy . . . and [s]ome danger of hypoglycemic reaction in type I diabetics."

78.    During a hypoglycemic episode while under the ADOC Defendants' care and supervision, Mr. Payne suffered a seizure, causing him to collapse and seriously injure his shoulder.

79.    After being released from his incarceration and obtaining sufficient medical care, Mr. Payne learned in late 2008, for the first time, that the aforementioned occurrences during his incarceration with the ADOC Defendants resulted in his current physically disabled condition, cognitive decline, and his total and permanent disability and unemployability.

### *Mr. Payne Is Irreversibly Damaged*

80.    Defendants' denial of adequate medical supervision and treatment necessary to manage effectively Mr. Payne's chronic disease while under Defendants' supervision and care has caused the irreparable deterioration of Mr. Payne's physical and psychological condition.

81.    Mr. Payne suffered, and continues to suffer, both physical and emotional trauma due to Defendants' actions and inactions described herein.

82.    Mr. Payne is totally and permanently disabled and unemployable due to Defendants' actions and inactions described herein.

-13-

83.  Mr. Payne has severe hypoglycemic unawareness, severe hypoglycemia, and possible gastroparesis due to Defendants' actions and inactions described herein.

84.  Mr. Payne has sustained some mild, though significant, verbal recall deficit, secondary to visual uncontrolled diabetes, due to Defendants' actions and inactions described herein.

85.  Mr. Payne suffers from two types of nerve damage (known as "neuropathy"), peripheral and autonomic, due to Defendants' actions and inactions described herein.

86.  Mr. Payne's peripheral neuropathy causes him to suffer constant pain in his arms, legs, and feet and contributes to an overall decline in Mr. Payne's motor skills because Mr. Payne's nerve endings are basically dead.  Because of the "death" of his nerve endings, Mr. Payne has no ability to determine when he has a laceration or wound near those dead nerve endings.  Thus infections frequently go unnoticed, and therefore untreated, because such infections cannot be felt.  These wounds also generally are unable to heal, often leading to gangrene or other infection.

87.  Mr. Payne's autonomic neuropathy causes Mr. Payne to endure constant, daily nausea and digestive problems as well as extremely high blood pressure and hypertension.

88.  Mr. Payne lacks feeling on the left side of his face due to the nerve damage that resulted from Defendants' actions and inactions described herein.

89.  After suffering a hypoglycemic episode and seizure, Mr. Payne collapsed and seriously injured his shoulder—an injury that the ADOC Defendants never treated, resulting in continuing, persistent daily pain and discomfort that Mr. Payne can only remedy through surgery.

90.  Mr. Payne demands a trial by jury on all issues triable of right by a jury in this action.

**FIRST CAUSE OF ACTION**

**(Violation of 42 U.S.C. § 1983 - Eighth and Fourteenth Amendments)**
**(Against the Maricopa Law Enforcement)**

91.   Mr. Payne re-alleges and incorporates all of the allegations contained in paragraphs 1 through 90 of this Complaint as though fully set forth herein.

92.   Maricopa Law Enforcement, and Sheriff Joseph Arpaio in particular, upon information and belief, were aware of conditions at the Maricopa County jails and that some prisoners required specific medical and dietary care, but nevertheless executed and implemented policies, procedures, customs and practices with deliberate indifference to the substantial risk of serious harm that such policies, procedures, customs and practices pose.

93.   Maricopa Law Enforcement, and Sheriff Joseph Arpaio in particular, upon information and belief, were aware of the conditions at the Maricopa County jails described herein, but nevertheless failed to act or otherwise correct unconstitutional and flawed policies, procedures, customs and practices.

94.   Maricopa Law Enforcement's, and Sheriff Joseph Arpaio's, unconstitutional actions and inactions described herein were committed under color or authority of law.

95.   Maricopa Law Enforcement, and Sheriff Joseph Arpaio in particular, were deliberately indifferent to Mr. Payne's serious medical needs related to his chronic medical condition.

96.   Maricopa Law Enforcement's, and Sheriff Joseph Arpaio's, actions and inactions described herein were committed intentionally and without rational justification and without any legitimate governmental purpose.

97.   Maricopa Law Enforcement's, and Sheriff Joseph Arpaio's, actions and inactions described herein subjected Mr. Payne to, and he suffered, and continues to

1   suffer, unnecessary and wanton psychological and physical pain and suffering that is

2   inconsistent with evolving standards of decency.

3       98.    Maricopa Law Enforcement's, and Sheriff Joseph Arpaio's, actions and

4   inactions described herein were committed in violation of Mr. Payne's right (i) to be free

5   from cruel and unusual punishment pursuant to the Eighth Amendment to the United

6   States Constitution; and (ii) to due process pursuant to the Fourteenth Amendment to the

7   United States Constitution.

8                           **SECOND CAUSE OF ACTION**

9           **(Violation of 42 U.S.C. § 12132- Americans with Disabilities Act)**
10                              **(All Defendants)**

11      99.    Mr. Payne re-alleges and incorporates all of the allegations contained in

12  paragraphs 1 through 98 of this Complaint as though fully set forth herein.

13      100.   Mr. Payne is a qualified individual with a disability, namely Type I diabetes.

14      101.   Mr. Payne was qualified to participate in or receive benefits of Defendants'

15  services, programs or activities.

16      102.   As described herein, Mr. Payne was excluded from or denied the benefits of

17  Defendants' services, programs, and activities.

18      103.   As described herein, Defendants failed to accommodate reasonably Mr.

19  Payne's chronic disease and resulting disability.

20      104.   As described herein, Defendants excluded or denied Mr. Payne the benefits

21  of Defendants' services, programs and activities by reason of his disability.

22      105.   Defendants were aware of Mr. Payne's disability and they were deliberately

23  indifferent to accommodating his needs and providing him the services, programs and

24  activities to which he was entitled.

25

26

1

**THIRD CAUSE OF ACTION**

2

**(Negligence)**

3

**(All Defendants)**

4

106.    Mr. Payne re-alleges and incorporates all of the allegations contained in

5

paragraphs 1 through 105 of this Complaint as though fully set forth herein.

6

107.    Defendants had a duty to provide Mr. Payne with constitutionally

7

adequate medical care, treatment and supervision while he was under their supervision.

8

108.    Defendants negligently breached their duty to provide Mr. Payne with

9

constitutionally adequate medical care , treatment and supervision through their various

10

actions and inactions as set forth herein.

11

109.    Defendants' negligent actions and inactions as set forth herein directly and

12

proximately damaged and injured Mr. Payne, including without limitation, causing Mr.

13

Payne to suffer physical and psychological damage resulting in his total and permanent

14

disability and unemployability.

15

110.    But for Defendants' negligent actions or inactions as set forth herein, Mr.

16

Payne would not have been damaged and injured as described herein.

17

**RELIEF REQUESTED**

18

WHEREFORE, Mr. Payne prays for relief as follows:

19

A.      For compensatory and general damages in an amount to be proven at trial;

20

B.      For punitive damages in an amount to be proven at trial;

21

C.      For reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C.

22

§ 1988 and any other statute or rule providing for an award of such fees and costs; and

23

D.      For such further relief as the Court may deem just and proper.

24

25

26

1  Dated:  June 3, 2009

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**PERKINS COIE BROWN & BAIN P.A.**

By: s/ Craig A. Morgan
      Philip R. Higdon
      Craig A. Morgan
      Rhonda L. Barnes
      Aaron S. Welling
      Harmony A. Simmons
      Suite 2000
      2901 North Central Avenue
      Phoenix, Arizona  85012-2788

Attorneys for Plaintiff
James A. Payne

15311531.9