|   |   |
|---|---|
| 1 | Thomas F. Harper, AZ State Bar No. 004203 |
| 2 | Erin E. Byrnes, AZ State Bar No. 021015<br>HARPER CHRISTIAN DICHTER GRAIF, P.C. |
| 3 | 2700 North Central Avenue, Suite 1200<br>Phoenix, Arizona 85004 |
| 4 | Tel: (602) 792-1700<br>Fax: (602) 792-1710 |
| 5 | tharper@hcdglaw.com<br>ebyrnes@hcdglaw.com |
| 6 | *Attorney for MCSO and Sheriff Arpaio* |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| James A. Payne, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>Joseph Arpaio, Maricopa County Sheriff, and Ava Arpaio, his wife; Maricopa County Sheriff's Department, a county agency; Maricopa County, a political subdivision; Fulton Brock, in his official capacity as Maricopa County Supervisor; Don Stapley, in his official capacity as Maricopa County Supervisor; Andy Kunasek, in his official capacity as Maricopa County Supervisor; Max Wilson, in his official capacity as Maricopa County Supervisor; Mary Rose Wilcox, in her official capacity as Maricopa County Supervisor; Maricopa County Correctional Health Services, a county agency; The State of Arizona; The Arizona Department of Corrections, a state agency; and Does 1 through 100,<br><br>    Defendants. | No. 2:09-cv-01195-NVW<br><br>**DEFENDANTS MARICOPA COUNTY SHERIFF'S OFFICE AND ARPAIO'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

  Pursuant to Rule 12(c), Fed. R. Civ. P., Defendants Arpaio and Maricopa County Sheriff's Office ("MCSO") move this Court for an Order dismissing all of Plaintiff James Payne's claims against these Defendants with prejudice. Both Plaintiff's 42 U.S.C. § 1983 and Americans With Disabilities claims should be dismissed as to these Defendants because neither claim is timely. Similarly, Plaintiff's negligence claim should be dismissed because Plaintiff failed to comply with Arizona's notice of claim statute, and

the statute of limitations for claims against public entities and employees.

Plaintiff has long been aware of both the alleged inadequate medical care and diet these Defendants provided him. He has also long held the belief that this inadequate care caused him injury, including deterioration of his eyesight, and nerve damage. For instance, in March of 2004, Plaintiff told a Maricopa Superior Court judge that he was a brittle diabetic, who "may not have long to live." A few months later, in July of 2004, Plaintiff filed another pleading in the same case, alleging that the County's failure to provide him with proper nutrition or insulin for his diabetes resulted in Plaintiff experiencing diabetic comas, loss of eyesight, and loss of use of one of his hands.

His County jail records also demonstrate that Plaintiff knew and complained of the inadequacy of care during his time in custody, and was aware of his claimed injuries from that inadequate care. Based on this evidence, the relevant statutes of limitations on Plaintiff's claims have run, and all his claims are now time-barred.

Additionally, all claims against MCSO should be dismissed because MCSO is a nonjural entity. Finally, any claims against Sheriff Arpaio related to any medical care or treatment Plaintiff received while in County jails are barred, since the Sheriff is not legally responsible for providing medical care to persons in Maricopa County jails. This Motion is more fully set forth and supported by the accompanying Memorandum of Points and Authorities, and the pleadings on file in this case, all of which are incorporated by this reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     RELEVANT FACTUAL BACKGROUND:**

This case arises out of Plaintiff's incarceration in Maricopa County jail facilities and in Arizona Department of Corrections facilities. Plaintiff has Type I diabetes and is a "brittle diabetic." Plaintiff alleges three causes of action: (1) that MCSO and Sheriff Arpaio violated his Eighth and Fourteenth Amendment rights by failing to provide him adequate medical care and diet for his diabetes; (2) that these Defendants discriminated against him and/or failed to reasonably accommodate him on the basis of his disability

1  (diabetes) in violation of the Americans with Disabilities Act ("ADA"); and (3) that
2  Defendants negligently failed to provide adequate medical care during his incarceration.
3  (*See* Complaint, Dkt. #1, at ¶¶ 91-110).

4        According to the Complaint, Plaintiff was first detained at the County's Durango
5  Jail between April and July, 2001.[1]  (Dkt. #1 at ¶¶ 28-29).  Plaintiff was released from
6  County custody in July of 2001, but was detained again beginning in September of 2001.
7  (Dkt. #1 at ¶¶ 30-31).  He remained in County custody until April of 2002, at which time
8  he was sentenced for a probation violation and transferred into the Arizona Department of
9  Corrections' ("ADOC") custody.  (Dkt. #1 at ¶ 32).  Plaintiff was in ADOC's Florence
10 facility until September of 2002, when he was transferred back to a County facility.  (Dkt.
11 #1 at ¶ 33).  This time, Plaintiff remained in County custody for approximately thirty (30)
12 days, and was then released.  (Dkt. #1 at ¶ 33).   In September 2003, Plaintiff was
13 evidently again sentenced to a term in ADOC, and was incarcerated in state custody from
14 September 2003 until his release in September 2007.  (Dkt. #1 at ¶¶ 34-35).

15       Well before the expiration of the statutes of limitation, as discussed in greater detail
16 below, Plaintiff complained – both formally and informally – regarding the sufficiency of
17 his medical care and injuries he claimed resulted from that care.  For instance, on May 16,
18 2004, Plaintiff filed a grievance, complaining that a County detention officer
19 misinterpreted Plaintiff's mumbling response to the officer, and failed to realize Plaintiff
20 was suffering a hypoglycemic incident.  (*See* Plaintiff's Notice of Claim Letter dated
21 January 20, 2009, Dkt. #1-2, attached as Exhibit 1, at 7).[2]  In this grievance, Plaintiff
22 stated that his proposed resolution was to "train the officers to properly handle this serious

---

[1] Plaintiff also spent time in County custody in 2003 and 2004, though those dates are not the subject of Plaintiff's allegations in his Complaint.  Nevertheless, those periods of incarceration, and the records related thereto, are significant on the issue of accrual of Plaintiff's claims, as discussed herein.

[2] Though a copy of this letter is attached as an exhibit to Plaintiff's Complaint, for the Court and the parties' ease of reviewing this Motion, Defendants have attached a copy of the notice of claim letter directly to this Motion.  Therefore, any citations to the letter's contents refer to the actual page numbers of that document, and not the pagination of the copy of the letter attached to the Complaint.

medical emergency *to prevent irreversible complications or even death*." (*See* Inmate Grievance Form dated May 16, 2004, attached as Exhibit *2*) (emphasis added).[3]

Plaintiff also filed an external grievance on June 2, 2004. Therein, Plaintiff sought redress for jail staff leaving him in "an emergency situation multiple times." (*See* Inmate External Grievance Appeal Form, dated June 2, 2004, attached hereto as Exhibit 3).[4] Plaintiff noted in this grievance that the American Diabetes Association promulgates regulations for correctional facilities in providing diabetic care, but Plaintiff suggested that the County jails either did not adopt, or did not follow, them. (*Id.*). Plaintiff relies on these same American Diabetes materials in his notice of claim letter. (Exhibit 1 at 14). The materials indicate that diabetes therapy is important and should be used *to reduce the risk of "later complications," including vision loss*. (*Id.*) (emphasis added).

At other times, Plaintiff complained directly to medical staff, noting that his insulin dosage had been changed, or that he was not getting the proper amount. (Exhibit 1 at 7). In his notice of claim letter, Plaintiff noted that Progress Notes dated June 26, 2004 indicate that he told staff that "they changed my insulin yesterday," and that he believed he was not getting the proper amount. (*Id.*). The letter also refers to Progress Notes for July 4, 2004, in which Plaintiff remarked that he does not believe medical staff was properly using the sliding scale for insulin dosages and he was "afraid to eat anything anymore" as a result. (*Id.*).

Additionally, Plaintiff's records also demonstrate that he complained to medical

---

[3] The inclusion of this grievance as an Exhibit does not convert this Motion into a motion for summary judgment. Plaintiff has attached his notice of claim letter to the Complaint as an exhibit, thereby incorporating its contents into the Complaint. The May 16, 2004 grievance is discussed in Plaintiff's claim letter, so it is likewise part of Plaintiff's Complaint, and may be submitted herewith without converting this Motion. *Tellabs, Inc. v. Maker Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007) (court may consider documents incorporated into a complaint by reference in ruling on a motion to dismiss, as well as other matters of which the court may take judicial notice); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (on a motion to dismiss, a court may consider materials "the authenticity of which [are] not contested, and upon which the plaintiff's complaint necessarily relies").

[4] This grievance is likewise discussed in Plaintiff's notice of claim letter, and is therefore incorporated by reference. It is properly included with this Motion, pursuant to the authority cited in footnote 4, *supra*.

4

staff regarding MCSO detention officers failing to provide him the proper diabetic diet. For instance, Plaintiff's claim letter alleges that on January 28, 2004, Plaintiff brought a bag of bread down to medical with him that contained bugs and he told medical staff that detention officers had refused to give him another sack. (Exhibit 1 at 6). According to Plaintiff, the detention officers' refusal to provide him with a new sack of carbohydrate-loaded food was the reason "his blood sugar would be low." (*Id.*).

Plaintiff also raised concerns about injuries he was allegedly suffering as a result of the medical treatment he was receiving in County custody in at least two pleadings he filed in his criminal cases in the Maricopa County Superior Court. For example, on March 5, 2004, Plaintiff filed a motion to continue a hearing in Maricopa County Case Numbers CR03-032688 and CR03-038074. In this motion, Plaintiff asks the Maricopa County Superior Court to grant a continuance to an upcoming hearing because Plaintiff had been arraigned on new charges, and counsel wanted to get the new case consolidated with the existing two criminal matters to facilitate a global plea agreement. (*See* Motion to Continue, dated March 5, 2004, attached as Exhibit 4).[5] Plaintiff and his defense attorney advised the court that they sought consolidation to facilitate a plea because plaintiff was a "brittle diabetic who may not have long to live." (*Id.* at 1).

Plaintiff successfully secured a global plea, and on July 7, 2004, Plaintiff's criminal defense attorney filed a Sentencing Memorandum. Therein, Plaintiff told the court that he "does not receive the nutrition and proper amount of insulin necessary to prevent him from going into diabetic comas …." (*See* Sentencing Memorandum dated July 7, 2004, attached as Exhibit 5, at 2). Plaintiff was referring to his treatment at "Madison Jail," one of the County's facilities (*Id.*).

Plaintiff attached two letters as exhibits to his Sentencing Memorandum. In the

---

[5] This motion (and the sentencing document attached at Exhibit 5) are properly submitted, and do not trigger conversion of this motion. Public records may be attached to motions for judgment on the pleadings without causing conversion. *See United States v. 14.02 Acres*, 530 F.3d 883, 894 (9th Cir. 2008); *see also Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (holding that the same principles of conversion applicable to Rule 12(b)(6) motions are applicable to Rule 12(c) motions).

5

first letter, Lori Munson (relationship to Plaintiff unknown) indicates that Plaintiff has had major issues in securing proper healthcare and diet while in County custody. (Exhibit 5 at 4). In fact, Ms. Munson advises the court that Plaintiff's "eyesight has seriously deteriorated and he has lost much use of his hand during his recent stay at the Madison [S]treet [J]ail." (*Id.*). Ms. Munson also indicates the "ADA" guidelines (apparently referring to the American Diabetes Association) are not followed by the jail. These are likely the same guidelines Plaintiff references in his June 2, 2004 external grievance, and that Plaintiff discussed in his notice of claim letter.

Plaintiff's ex-wife, Geri Payne, wrote the second letter attached to the Sentencing Memorandum. (Exhibit 5 at 5). She advises the sentencing court that while Plaintiff was in the county jail, "his medical condition became worse. His blood sugar levels were severely extreme [and] [h]is eyesight deteriorated and [he] may end up blind." (*Id.*).

According to Plaintiff, prior to incarceration, he successfully managed his Type I diabetes through diet, exercise, and medical care. (Dkt. #1-2 at 3). He was originally diagnosed with diabetes in 1983, and claims he began successfully managing it immediately. (Dkt. #1-2 at 4). In 1990, he saw an endocrinologist who counseled him on using diet to control his diabetes. (*Id.*). Using the techniques he learned from his endocrinologist, Plaintiff claims he "led a life relatively free from diabetic complications …," until he was incarcerated by the County beginning in 2001. (*Id.*).

Plaintiff filed this lawsuit on June 3, 2009, after filing his notice of claim letter, dated January 20, 2009, on various parties, including MCSO, the County Board of Supervisors, and Maricopa County Correctional Health Services. (*See* Exhibit 1 at 1). The letter was neither addressed to, nor served on, Sheriff Arpaio. (*Id.*).

## II. PLAINTIFF'S § 1983 CLAIM IS TIME-BARRED.

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants Arpaio and MCSO violated his Eighth and Fourteenth Amendment constitutional rights by failing to meet his medical and dietary needs, as necessitated by his diabetes. (Dkt. #1 at ¶¶ 92, 95). These claims are unquestionably untimely, and are therefore barred.

### a. Plaintiff's civil rights claim is subject to a two-year statute of limitations.

Because § 1983 does not contain its own statute of limitations, federal courts borrow the forum state's applicable statute of limitations for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985). Arizona's limitations period for personal injury claims is two years, and Plaintiff therefore had two years from the date of accrual in which to file his § 1983 claims. *See* A.R.S. § 12-542; *see also Marks v. Parra*, 785 F.2d 1419, 1420 (9th Cir. 1986). Thus, the question is when did Plaintiff's claim accrue.

### b. Plaintiff's claim accrued, *at the very latest*, on July 7, 2004.

Section 1983 also does not contain any language regarding accrual, so the standard is set by federal law. *Wallace v. Kato*, 120 S.Ct. 1071, 1095 (2007). And, according to federal authority, "a claim accrues when the plaintiff knows of or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1998) (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)). Put differently, a claim accrues when "the plaintiff has a complete and present cause of action." *Wallace*, 120 S.Ct. at 1095 (*citing Bay Area Laundry and Dry Cleaning Pension Fund v. Ferbar Corp. of Calif.*, 522 U.S. 192, 201 (1941)); *see also Alexopolus v. San Francisco Unif. Sch. Dist.*, 817 F.2d 551, 555 (9th Cir. 1987) (federal civil rights claims accrue when plaintiff knows, or has reason to know, of the injuries that form the basis of his claims).

The heart of Plaintiff's § 1983 claim is that MCSO and Sheriff Arpaio failed to provide adequate "medical care, supervision, and treatment" for Plaintiff's chronic disease (diabetes) while Plaintiff was in County custody. (Dkt. #1 at ¶¶ 19, 49-50). In support of this claim, Plaintiff points to the fact that these Defendants provided him with insufficient, inappropriate, and/or inedible food to allow him to control his diabetes via diet. (*Id.* at ¶¶ 49-50). Plaintiff also alleges that he frequently received either no insulin, or the incorrect dosage of insulin, which likewise allowed his diabetes to go uncontrolled. (*Id.* at ¶¶ 53-54). Plaintiff alleges that MCSO and Sheriff Arpaio's failure to provide adequate medical and dietary care for his diabetic condition "exacerbated his chronic disease and disability,

and caused him irreversible physical and psychological damage ….” (*Id.* at ¶ 37).

According to federal law, Plaintiff's claims accrued when he knew, or should have known, of the injuries that were the basis for his claim(s). Here, Plaintiff alleges that, as a result of Defendants' misconduct, he suffered (and is suffering from) hypoglycemia, the effects thereof, nerve damage/neuropathy, and vision loss. (*Id.* at ¶¶ 83-85). It is clear that Plaintiff was aware of the exacerbation of his diabetic condition, at least as early as March 5, 2004, when he reported to the criminal judge hearing his cases that he was a "brittle diabetic," and that he "may not have long to live." (Exhibit 4 at 1). But at the very latest, as is clear from Plaintiff's notice of claim letter, and the records referred to therein, his claims accrued on July 7, 2004.

Plaintiff has always known – and made known – the need for appropriate medical care. The medical records he discusses in his notice of claim relating to incarceration in County jail facilities demonstrate this. Plaintiff's notice of claim letter discusses medical Progress Notes contained in Plaintiff's jail file in which Plaintiff complains about not receiving insulin, or receiving the wrong amount. These same Notes indicate Plaintiff complained about the sufficiency of his diet, including the quality and quantity of his food.

Moreover, Plaintiff has long been savvy not only about his medical condition, but also about the consequences of failing to properly treat it. Plaintiff's claim letter establishes that since at least 1990, he has known of the need to manage his diabetes through the proper use of insulin, diet, and exercise. The letter demonstrates that he knew that the failure to provide proper treatment would likely result in his alleged injuries.

Indeed, as early as the summer of 2004, records demonstrate that Plaintiff was clearly of the mind that the County's inadequate treatment of his diabetes was resulting in injury to him. For instance, in his May 16, 2004 grievance, Plaintiff complained of the fact that County detention staff had failed to recognize the symptoms of his hypoglycemic episode, and that without proper training on dealing with his medical condition, he might suffer "**irreversible complications or even death**." (Exhibit 2 at 1). Plaintiff again

addressed the consequences of improper County jail medical care in his June 2, 2004 external grievance, where he noted that Jail staff had left him in "an emergency situation multiple times." (Exhibit 3 at 1). In that same grievance, he also references the American Diabetes Association's regulations for diabetes care in correctional facilities, a document that expressly acknowledges failure to provide care may result in serious consequences, including vision loss. By referencing the document, Plaintiff acknowledged the potential for injuries as a result of the lack of adequate care.

Even if this Court does not believe these jail records sufficient to establish that Plaintiff knew of his injuries upon which his claims are based and that his claims accrued in May or June of 2004, the Court should agree that at the latest, Plaintiff's claim accrued on July 7, 2004, as is clear from his Sentencing Memorandum. The same issues at the heart of this case were addressed in the Memorandum, where Plaintiff's defense attorney told the trial court that Plaintiff "[did] not receive the nutrition and proper amount of insulin necessary" while in County jail facilities. According to counsel, this led to Plaintiff suffering diabetic comas.

Further, and perhaps more importantly, according to the two letters attached to that Memorandum, Plaintiff's eyesight had "seriously deteriorated" while he was in County custody, and he had "lost much use of his hand." These are the same "injuries" which Plaintiff now alleges were the result of improper or inadequate medical and dietary care during his 2001-02 incarceration. Plaintiff thus knew he had been injured, and how he had been injured, since July 7, 2004. Plaintiff thus had two years, or until July 7, 2006, to file his lawsuit, but failed to so. Plaintiff's § 1983 claims against MSCO and Sheriff Arpaio must now be dismissed as untimely.

### III. PLAINTIFF'S ADA CLAIMS ARE LIKEWISE OUTSIDE OF THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS.

Like his § 1983 claim, Plaintiff's ADA claim is also subject to a two-year limitation period, and is therefore barred. Pursuant to 42 U.S.C. § 12132, Plaintiff alleges he was discriminated against on the basis of disability, excluded from, or denied, the

1  benefits of Defendants' services, programs, and activities, and/or was not reasonably
2  accommodated. (Dkt. #1 at ¶ 102). Just as § 1983 does not contain its own statute of
3  limitations, so too does Title II of the ADA lack a limitations period. And because Title II
4  incorporates the same rights, remedies and procedures as does the Rehabilitation Act
5  ("RA") (42 U.S.C. § 12133), Title II shares the same approach to identifying a limitations
6  period as does the RA. *See Madden-Tyler v. Maricopa Co.*, 189 Ariz. 462, 469, 943 P.2d
7  822, 829 (1997). All three federal statutes adopt the relevant personal injury statute of
8  limitations for the jurisdiction in which a claim is brought and, so, Plaintiff's ADA claim
9  is subject to the same two-year statute of limitations that applies to his § 1983 claim.
10 *Madden-Tyler*, 189 Ariz. at 469, 943 P.2d at 829; *see also* A.R.S. § 12-542.

11    Presumably, Plaintiff's ADA claim relates to his allegations that these Defendants
12 denied him adequate medical treatment, services, and/or diet for his diabetes. In other
13 words, this claim, regardless of how it is cast (i.e. as a discrimination, reasonable
14 accommodation, or exclusion/denial of benefits claim), relates directly to Defendants'
15 alleged failure to provide Plaintiff adequate or appropriate diabetic care. Therefore,
16 Plaintiff's ADA claim accrued when he knew, or should have, that he was being denied
17 the benefits of MCSO's services, programs, and activities – namely, the benefit of
18 adequate diabetic care.

19    Again, as described above, at least as early as the summer of 2004, Plaintiff was
20 voicing concerns both inside the jail system, and externally, that he was not receiving
21 adequate medical care in light of his diabetes. His May 16, 2004 grievance alleges that
22 his hypoglycemic episode was misinterpreted as willful noncompliance, versus a serious
23 medical condition. The June 2004 external grievance notes that because the care is so bad
24 in County jails, Plaintiff has been left in "emergency situations" on more than one
25 occasion. Additionally, the Progress Notes Plaintiff refers to in his notice of claim letter
26 recount that Plaintiff complained not only of the dosage and frequency of his insulin shots
27 in 2003-04, but also that he complained of the diet he was receiving. All of these issues
28 are now the basis for Plaintiff's claims in this lawsuit.

The two court documents attached as Exhibit 4 and 5 to this Motion similarly demonstrate that in 2004 Plaintiff was aware of Defendants' alleged denial of adequate care. In short, *no later than* July 7, 2004,[6] Plaintiff knew not only of the deprivations of benefits and services of adequate medical care that underlie his ADA claim, he also knew of injuries he claims resulted. Again, his pleadings in his criminal case advise that court that Plaintiff was not receiving enough insulin, and was otherwise not being treated properly, resulting in diabetic comas, loss of eyesight, and the inability to use one of his hands.

This Court must assume, therefore, that by July 7, 2004, at the latest, Plaintiff was aware of MCSO and Sheriff Arpaio's alleged denial of the services and benefits of adequate medical care. His ADA claim therefore accrued on July 7, 2004, and Plaintiff had until July 7, 2006 to file a claim. This claim is outside of time, and any ADA claim against these Defendants must therefore be dismissed.

### IV. PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED BECAUSE PLAINTIFF DID NOT TIMELY COMPLY WITH ARIZONA'S NOTICE OF CLAIM REQUIREMENTS, AND DID NOT FILE THIS ACTION WITHIN THE REQUIRED ONE-YEAR PERIOD FOR DOING SO.

In Arizona, a person who has a claim against a public entity and/or a public employee is required to file a claim with the person authorized to accept service for the public entity and/or employee within 180 days of the accrual of the claim. A.R.S. § 12.821.01(A). A claim accrues when the damaged person realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused the damage. A.R.S. § 12.821.01(B). Failure to file a timely notice of claim is an absolute bar to any lawsuit against the public entity or employee. A.R.S. § 12-821.01(A); *see also Salerno v. P.M. Espinoza*, 210 Ariz. 586, 588, 115 P.3d 626, 629 (App. 2005) (filing a notice of claim is a "mandatory and essential

---

[6] Again, Defendants use the July 7, 2004 date as the latest date that Plaintiff's claim could have accrued, based on their investigation to date. Defendants actually believe, however, that the claim would have accrued no later than Plaintiff's last day in County custody during the 2001-02 dates of incarceration that are the subject matter of this lawsuit. Any deprivation/discrimination related to County services, programs, and/or activities would have ended upon Plaintiff's release.

prerequisite to filing suit").

### a. **Plaintiff never filed a notice with Sheriff Arpaio, so any common law against him is barred.**

In this case, Plaintiff was required to file a notice of claim directly with Sheriff Arpaio within 180 days of the accrual of his claim. As a preliminary matter, Plaintiff's notice is deficient because it was not filed with Sheriff Arpaio, a public official against whom Plaintiff now seeks to assert a common law negligence claim. While it was proper for Plaintiff to serve MCSO's copy of the notice on the Clerk for the Maricopa County Board of Supervisors, as set forth in Rule 4.1(i), Ariz. R. Civ. P., since MCSO is a government subdivision of the County, the notice of claim statute required Plaintiff to file a copy of his notice of claim directly on Sheriff Arpaio. A.R.S. § 12-821.01(A). As the Court will note, the letter is neither addressed to Sheriff Arpaio, nor does Plaintiff allege he filed a copy of the letter directly with Sheriff Arpaio. *See*, *generally*, Exhibit 1. Thus, any state or common law claim Plaintiff has against Sheriff Arpaio is barred due to non-compliance with A.R.S. § 12-821.01.

### b. **Plaintiff's notice of claim against MCSO was untimely.**

The same facts relevant to accrual of Plaintiff's § 1983 and ADA claims are relevant to the accrual of Plaintiff's common law negligence claim. Per A.R.S. § 12-821.01(B), Plaintiff's negligence claim accrued when Plaintiff knew of the act or event that caused his damage, and that such act or event caused such damage. As is true with his federal law claims, the issue is the <u>existence</u> of injury, and not the extent thereof.

At least as early as May 2004, Plaintiff demonstrated that he was well-aware of the acts or events that he believed were causing him damage. His grievances and medical records from this period indicate Plaintiff regularly expressed concern that the officers charged with his care did not know how to properly identify Plaintiff's diabetic symptoms, or, more precisely, the symptoms of low and high blood sugar. Other medical records Plaintiff relies upon in his notice of claim show that Plaintiff knew at least as early as 2004 that these Defendants were not properly providing him insulin and were failing to

provide him with an adequate, diabetic-appropriate diet. As Plaintiff expressed to Jail medical staff, these failures were the reason his blood sugar was low. And, as indicated in the court documents discussed throughout this Motion, Plaintiff believed that Defendants' failure to provide him with proper care and a diabetic-appropriate diet were the basis for his hypoglycemic and hyperglycemic episodes, and similarly had caused deterioration in his eyesight and the inability to use his hand.

Thus, Plaintiff's 2003 and 2004 medical records and grievances, which are discussed in the notice of claim letter, and the two court records from the underlying criminal cases, unequivocally demonstrate that Plaintiff knew of the conduct and alleged injuries that resulted by July 7, 2004. As is true of all his other claims, this is the latest date on which Plaintiff's negligence claim could have accrued. According to A.R.S. § 12-821.01(A), Plaintiff had 180 days from July 7, 2004 to prepare and file his notice of claim – which would have been on or before January 3, 2005, according to Defendants' calculations. Because Plaintiff did not timely file his notice of claim against either MCSO or Sheriff Arpaio, any common law or state law claims against either Defendant are barred.

### c. **The negligence claim is also outside the applicable one-year statute of limitations.**

Not only is Plaintiff's negligence claim barred by his failure to properly and timely file his notice of claim, it is also barred, independently, because Plaintiff failed to file this lawsuit within one year of accrual. Arizona law provides that actions against a public entity and/or a public employee must be brought within one year of the claim's accrual. *See* A.R.S. § 12-821. Anything brought thereafter is barred. *Id.* Here, Plaintiff had one year from the date of accrual which, at the latest, was July 7, 2004. Thus any lawsuit alleging a state law claim against MCSO and/or Sheriff Arpaio had to be filed on or before July 7, 2005. This lawsuit is untimely, and Plaintiff's negligence claim against these Defendants should be dismissed.

13

V. **MCSO IS A NONJURAL ENTITY AND ALL PLAINTIFF'S CLAIMS AGAINST IT MUST THEREFORE BE DISMISSED.**

Plaintiff's claims against MCSO must also be dismissed because it is a nonjural entity, without the capacity to be sued, and is therefore an improper party Defendant under Rule 17, Fed. R. Civ. P. In Arizona, a government entity has only those powers and attributes that the legislature delegate to it. *Cox v. Pima Cnty Law Enf. Merit Council*, 27 Ariz.App. 494, 495, 556 P.2d 342, 343 (1976); *see also Alexander v. Public Safety Personnel Retirement System*, 166 Ariz. 589, 592, 804 P.2d 122, 125 (App. 1990). Thus, a government entity can only sue or be sued when it "legally exists and is legally capable of being sued." *Yamamoto v. Santa Cruz County Bd. of Supervisors*, 124 Ariz. 538, 539, 606 P.2d 28, 29 (App. 1979) (citation omitted).

Arizona law further provides that "each county is a body politic and corporate, possessing all the powers expressly provided in the constitution or laws of this state and such powers as are necessarily implied therefrom." A.R.S. § 11-202(A). A county's powers are defined in A.R.S. § 11-201(A)(1), and include the power to "sue and be sued." No separate enabling statute exists authorizing MCSO to sue or be sued as its own, separate and distinct legal entity. Indeed, the weight of settled authority holds that government agencies that lack the authority to sue and be sued as separate legal entities may not be named as party defendants. *See, e.g., Wilson v. Maricopa County,* 2005 WL 3054051, **2 (D. Ariz. 2005) (holding that MCSO is a "sub-part of the County," and an integral part of County government used to carry out County policing obligations); *see also Flanders v. Maricopa County*, 203 Ariz. 368, 375 n.5, 53 P.3d 837, 844 (App. 2002) (eliminating fault previously assessed to MCSO, since MCSO is not a jural entity). Therefore any claims against MCSO must be dismissed, as it is a nonjural entity, not susceptible to suit in its own name.

VI. **SHERIFF ARPAIO CANNOT BE HELD LIABLE ON ANY OF PLAINTIFF'S CLAIMS RELATED TO HIS MEDICAL CARE BECAUSE ARPAIO IS NOT RESPONSIBLE FOR HEALTHCARE IN THE COUNTY JAILS.**

The vast majority of Plaintiff's claims against Sheriff Arpaio arise out of the

alleged insufficiency of medical treatment for his diabetes during his period in County custody. Sheriff Arpaio cannot be held liable for any of Plaintiff's claims relating to his medical care while in County custody because Sheriff Arpaio does not bear any legal responsibility for healthcare in the Maricopa County jails. This is clear from a number of relevant statutes. First, while the Arizona legislature has delegated the responsibility of operating the County's jails to the Sheriff, that delegation of authority does not include the duty of providing inmate healthcare. The Sheriff's duties are set forth in both A.R.S. §§ 11-441(A)(1) and 31-101. While both statutes require Sheriff Arpaio to keep the County jails and the prisoners therein, neither statute authorizes or directs the Sheriff to provide healthcare for the inmates and detainees housed in the County's facilities.

Rather, A.R.S. § 11-291(A) provides that the County may "provide for the hospitalization and medical care of the sick in the county and … to persons under the supervision of a county corrections agency." The County is authorized to employ physicians and other personnel necessary to fulfill the purposes of A.R.S. § 11-291(A). Maricopa County has created Maricopa County Correctional Health Services to implement its responsibility to provide medical care to those under the supervision of MCSO and Sheriff Arpaio in the County's jails. Therefore, Sheriff Arpaio cannot be held liable on Plaintiff's claims that are related to inadequate medical care, as he is not the party legally responsible for providing medical care or treatment in the County jails.

## VII. CONCLUSION:

Based on the foregoing arguments, Defendants MCSO and Sheriff Arpaio ask this Court to enter an Order dismissing all of Plaintiff's claims against these Defendants.

RESPECTFULLY SUBMITTED this 21st day of August, 2009.

HARPER CHRISTIAN DICHTER GRAIF, P.C.

By /s/ Erin E. Byrnes
Thomas F. Harper
Erin E. Byrnes
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
*Counsel for MCSO and Sheriff Arpaio*

15

1  I hereby certify that on August 21, 2009, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

Philip R. Higdon
Craig A. Morgan
Perkins Coie Brown & Bain, P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
*Attorneys for Plaintiff James A. Payne*

Richard P. Broder
Assistant Attorney General
177 North Church Avenue, Suite 1105
Tucson, Arizona  85701
*Attorney for State Defendants*

Laurence G. Tinsley, Jr.
Maricopa County Office of General Litigation Services
Maricopa County Administration Building
301 West Jefferson, Suite 3200
Phoenix, Arizona  85003
*Attorney for Maricopa County, the County Board of Supervisors, and CHS*

/s/ Amanda Ferguson