Thomas F. Harper, AZ State Bar No. 004203
Erin E. Byrnes, AZ State Bar No. 021015
HARPER CHRISTIAN DICHTER GRAIF, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona  85004
Tel:  (602) 792-1700
Fax:  (602) 792-1710
tharper@hcdglaw.com
ebyrnes@hcdglaw.com
*Attorneys for MCSO and Sheriff Arpaio*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| James A. Payne, an individual,<br>Plaintiff,<br><br>v.<br><br>Joseph Arpaio, Maricopa County Sheriff, et al.,<br>Defendants. | No.  2:09-cv-01195-NVW<br><br>**DEFENDANTS MARICOPA COUNTY SHERIFF'S OFFICE AND ARPAIO'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |

This Court should grant Defendants Arapio and the Maricopa County Sheriff's Office ("MCSO") judgment on the pleadings because the undisputed facts, as established by Plaintiff, demonstrate all his claims accrued, *at the latest*, in 2004.  His state law claims are barred not only because they are untimely, but also because Plaintiff did not timely file a notice of claim.  For these reasons, and those set forth in the original Motion, Plaintiff's claims against these Defendants should be dismissed.

**I.   THERE IS NO ISSUE OF FACT PRECLUDING A FINDING THAT PLAINTIFF'S § 1983 AND COMMON LAW NEGLIGENCE CLAIMS ARE TIME-BARRED.**

Defendants' Motion for Judgment on the Pleadings ultimately can be reduced to determining when Plaintiff's claims accrued.  A claim under § 1983 accrues when the plaintiff knows, or has reason to know, of the injury that is the basis of his action and the cause of the injury. *Cabrera v. City of Huntington Park,* 159 F.3d 374, 379 (9th Cir. 1998); *see also Dyniewicz v. U.S.*, 742 F.2d 484, 486-87 (9th Cir. 1984) (the "cause" of an injury is the "immediate physical cause").  Taking all of the allegations in Plaintiff's Complaint as true, and viewing those allegations in connection with the materials Defendants

properly introduced in connection with their original Motion,[1] it is indisputable that Plaintiff knew of his injury and its physical cause no later than July of 2004. Despite Plaintiff's contention to the contrary, there is no issue of fact[2] precluding this Court from entering judgment in this case.[3]

Before he was incarcerated by the County, Plaintiff says "he successfully managed and controlled his chronic disease [diabetes] …" and "led a life relatively free from diabetic complications …." (Doc. #1 at ¶ 19, Exh. 1 at 3); (Doc. # 54 at 1). But this all began to change in April of 2001, when he was arrested and put in the Durango Jail, a Maricopa County jail facility. (Doc. #1, Exh. 1 at 3). Almost immediately, Plaintiff says his medical needs went unmet, or were intentionally disregarded. And the evidence shows that Plaintiff began addressing the perceived inadequacies in treatment at least as early as 2003.[4]

---

[1] Defendants properly submitted materials pursuant to exceptions to the conversion rule. Plaintiff, however, has improperly included materials with his Response, including certain VA medical records from August – September of 2008, as well as a copy of Maricopa County's Notice of Claim Form. (Doc. #54-1). These materials were not referred to in the Complaint or Plaintiff's notice of claim, nor does the Complaint or notice of claim rely on the exhibits Plaintiff has attached to his Response. Plaintiff offers no legal authority providing he can attach them in a response to a motion for judgment on the pleadings and, as such, these documents were submitted in violation of the conversion rule and Defendants move to strike them.

[2] The cases Plaintiff cites in support of his contention that accrual is always a fact issue are either unavailing, or plainly inapplicable. *See*, *e.g.*, *McSherry v. City of Long Beach*, 423 F.3d 1015, 1020-21 (9th Cir. 2005) (court held judgment improperly granted under Rule 50(a), where defendant moved for judgment before plaintiff had concluded presentation of evidence because Rule required that plaintiff's evidence be "fully heard" before judgment could be granted); *see also Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir. 1999) (dealing only with claim preclusion, not accrual).

[3] A motion for judgment on the pleadings under Rule 12(c) should be granted where there is no issue of material fact on the face of the pleadings. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). This is not the same as saying accrual is always an issue of fact precluding a court from granting a motion for judgment on the pleadings where accrual is an issue.

[4] While Plaintiff's Complaint relates only to incarceration in County facilities in 2001-02, all the records he relies on in his Complaint and his notice of claim letter involve incarceration in County jails in 2003-04. Upon information and belief, all of the records that may have existed for Plaintiff's incarceration in 2001-02 have been destroyed pursuant to relevant document retention polices. Thus, while Defendants believe it is highly likely those documents would show Plaintiff complaining of the lack of treatment and may also have shown Plaintiff's awareness of his injury earlier than 2004, the only records available are from 2003-04 and therefore Defendant relies on those here.

By May 16, 2004, Plaintiff demonstrated he was aware of the likely consequences of Defendants' failure to adequately treat his diabetes. According to a grievance filed on this date, Plaintiff suffered a hypoglycemic episode, resulting in slurred or mumbled speech, but Defendants did not properly respond with appropriate treatment. (Doc. #1, Exh. 1 at 5). Plaintiff's proposed resolution to this failure to treat was to better train officers to properly handle diabetic emergencies to "prevent irreversible complications or even death." (Doc. #42 , Exh. 2). Plaintiff later suggested that detention officers be trained according to the American Diabetes Association's regulations for providing diabetic care in correctional facilities (*Id.*, Exh. 3), which expressly state that a "hiatus in either medication or appropriate nutrition may lead to either severe hypo- or hyperglycemia that can *rapidly progress to irreversible complications*, even death." (Doc. #1, Exh. 1 at 6). Given his reference to and reliance on the Association's materials in May of 2004, Plaintiff plainly knew of the likelihood of complications that he might (and allegedly did) suffer as a result of failure to treat his pre-existing diabetes.[5]

The question thus becomes at what point Plaintiff became aware of his actual injury. His "injury" was the deterioration and development of his diabetes into a worse condition. The Complaint makes this abundantly clear, stating that Defendants' failure to treat Plaintiff's diabetes "exacerbated his chronic disease" and "has caused irreparable deterioration" of his condition. (Doc. #1 at ¶¶ 37, 80). In their original Motion, Defendants discussed that Plaintiff's condition began to demonstrably deteriorate at least as of 2004, and arguably before. (Doc. #42 at 3-6). Per his notice of claim, he began suffering comas due to vacillations in his blood sugar upon incarceration in 2001; by 2004, he had suffered a significant deterioration of his eyesight, and the loss of use of at least one hand (perhaps due to nerve damage). In fact, by the summer of 2004, his

---

[5] Plaintiff's management of his diabetes prior to incarceration of 2001 was so successful, he claims, that he experienced virtually no complications of the disease. This suggests that Plaintiff was keenly aware that the failure to properly treat his condition would result in complication and that he had a heightened sense of awareness likely leading him to more quickly recognize the onset of complications of diabetes and the symptoms that indicated a deterioration or worsening of his condition.

3

1  condition had deteriorated so much, Plaintiff told the criminal judge tasked with
2  sentencing him that he "may not have long to live."

3  While the parties may dispute which specific complications constitute recognizable
4  consequences of the alleged failure to treat, the fact remains that the above-cited
5  complications were indicative of a worsening of condition of which Plaintiff was well-
6  aware no later than July 7, 2004.[6]  Any § 1983 claim he wished to bring on such an injury
7  had to be filed within two years, or no later than July 6, 2007.  Plaintiff did not meet this
8  deadline and his § 1983 claims are now barred.

**A.     There is no reason for the Court to apply *Augustine* to this case.**

Plaintiff urges this Court to apply the accrual standard announced in *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983) to this case.  There is no reason to do so.  In *Augustine* and the cases following its approach, the plaintiff neither knew of the wrongdoing forming the basis of his claim, nor had a reason to suspect that anything was wrong.  *Augustine*, 704 F.2d at 1076 (treating physician failed to diagnose a bump in plaintiff's mouth as cancerous); *see also Bibeau v. Pacific Northwest Research Foundation, Inc.*, 188 F.3d 1105 (9th Cir. 1998) (plaintiff's conspiracy claim did not accrue until he had reason to believe symptoms he was suffering were tied to radiation experiment and until he knew he was fraudulently induced to participate in that experiment).  By contrast, in this case, Plaintif not only suspected wrongdoing, he knew of it, as demonstrated by his frequent complaints (official and unofficial) regarding the failure to treat and the putative consequences thereof, and in his legal papers[7] submitted in

---

[6] Plaintiff cannot now legitimately contend that he was unaware these complications were related to the failure to treat his diabetes when his grievances are replete with warnings of the likely consequences of that alleged inadequacy in handling his diabetic needs.

[7] Plaintiff seeks to minimize the facts established in the sentencing memorandum of July 2004 (Doc. #42, Exh. 5), referring to the statements of his criminal defense attorney, friend and ex-wife as nothing more than "speculative third party statements." (Doc. #54 at 7).  This evidence cannot be so casually disregarded.  In making representations to the court, Plaintiff's attorney was acting as his agent, and therefore the attorney's statements are the functional equivalent of Plaintiff's own words.  Further, at the time she submitted a letter regarding Plaintiff's worsening medical condition, Plaintiff's ex-wife was living with Plaintiff; for Plaintiff to attempt to brush off Ms. Payne's comments as speculation defies logic.

his criminal action in 2004 detailing the development of many of the very complications which now form the basis of his claim related to the deterioration of his diabetic condition.

The standard applicable to this case is therefore the same as that announced in *United States v. Kubrik*, 444 U.S. 111, 122 (1979) and cases following that decision, like *Davis v. United States*, 642 F.2d 328, 330 (9th Cir. 1981), which hold a claim accrues at the time of injury. In both *Kubrik* and *Davis*, the court refused to toll the statute of limitations where the plaintiff knew of his injury and the cause (deafness resulting from the improper use of neomycin to treat a wound and paralysis resulting from polio inoculation, respectively).[8] The court likewise expressly rejected the plaintiffs' request to toll the statue until such time as the plaintiff knew or had reason to suspect some negligence,[9] noting that once a plaintiff knows of an injury and its cause, he is on the same footing as any other tort plaintiff and thus has the obligation to investigate and determine if a claim should be filed. *Davis*, 642 F.3d at 331; *see also Davis v. Yageo Corp.*, 481 F.3d 661, 673-74 (referring to California law and noting a claim accrues with "the infliction of appreciable and actual harm, however uncertain in amount") (citation omitted).

The same is true in this case. There is no question that Plaintiff knew of his injury and believed Defendants' failure to treat was the cause. There is no basis, therefore, for the Court to toll the statute until 2008, which is when Plaintiff alleges he became aware of the extent of his damages (i.e. the deterioration of his condition) and began to suspect Defendants were responsible for them. *Herrera-Diaz v. Dep't of the Navy*, 845 F.2d 1534, 1537 (9th Cir. 1988) (where the plaintiff has reason to and does, in fact, suspect that

---

[8] *Kubrick* is equally applicable to cases in which an omission is the cause of injury, such as the failure to treat a condition, as Plaintiff alleges. *See Sexton v. U.S.*, 832 F.2d 629, 634 (D.C. Cir. 1987).

[9] Plaintiff suggests he did not know of Defendants' negligence and the role it played in causing his injuries. *Kubrick* explicitly rejects the very argument Plaintiff advances here – that accrual is tolled until the claimant knows, or has reason to know, that there was negligence. *Kubrick*, 444 U.S. at 122.

particular act or omission is problematic, that is sufficient for the claim to accrue).

      **B.    <u>Even if this Court applies *Augustine* in determining when Plaintiff's claim accrued, Defendants are nevertheless entitled to dismissal.</u>**

Even if this Court applies the *Augustine* accrual standard, however, it is clear that Plaintiff's claims are untimely and should be dismissed. *Augustine* involved a medical malpractice claim regarding the failure to diagnose and treat brought pursuant to the Federal Tort Claims Act ("FTCA"). *Augustine*, 704 F.2d at 1075. The claim in *Augustine* arose from the failure of a military dentist and oral surgeon to properly diagnose (and therefore treat) a cancerous bump in the plaintiff's mouth. Noting that the identification of an injury and/or its cause in a failure to diagnose/treat claim ***may*** be (but was not always) more difficult, especially where the claimant had a pre-existing condition, the court held the "injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.". *Id.* at 1078 (emphasis in original). Thus, "it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem *into a more serious condition* that his cause of action can be said to have accrued …." *Id.* (Emphasis added).

At least as early as 2004, and likely earlier, Plaintiff knew that Defendants' inadequate or failed treatment of his diabetes was resulting in a worsening of his condition. While he had never suffered complications before being incarcerated, by 2001 Plaintiff was having diabetic comas, and the complications from lack of treatment escalated to a point that Plaintiff was losing his eyesight, having trouble speaking, and suffering the loss of a use of a hand. *Augustine* says that a failure to treat claim accrues when the plaintiff discovers that the failure to treat "led to his deteriorating condition." *Id.* at 1078. Thus, even applying *Augustine*'s more generous accrual standard, Plaintiff's § 1983 claims must be held to have accrued no later than July 7, 2004.[10]

---

[10] As the County noted, this case is much more akin to the facts of *Massey v. United States*, 312 F.3d 272 (7th Cir. 2002), where the plaintiff brought an FTCA claim based on the failure to operate on his pre-existing hernia in a more timely fashion. The court held that plaintiff's claim accrued when he discovered his injury (which the court

Plaintiff argues, though, that his claim did not accrue until after he was released from custody and had consulted with a doctor in 2008.[11] (Doc. #54 at 2). Only then, says Plaintiff, was he aware of not only the injury and its cause, but also **the full extent** of the injury. That argument is inconsistent with *Augustine* and has been rejected. *See Alexopulos v. Riles*, 784 F.3d 1408, 1411 (9th Cir. 1986) (§ 1983 will not be tolled until the full extent of damage has been suffered and is known); *see also Louisiana-Pacific Corp. v. Asarco Inc.*, 24 F.3d 1565, 1581 (9th Cir. 1994) (the full extent of damage or loss need not be known, so long as the claimant is aware of some injury). Therefore, regardless of whether this Court applies the *Kubrick* or *Augustine* standard of accrual, Plaintiff's § 1983 claims are untimely and should be dismissed.

**B.   Plaintiff's negligence claim is also untimely and should be dismissed.**

Under A.R.S. § 12-821 Plaintiff's negligence claim accrued when he knew of his injury and the person/entity that caused it. As discussed above and in Defendants' original motion, the undisputed facts show Plaintiff knew of the deterioration of his diabetes, and believed it to be a consequence of Defendants' failure to treat, at least as early as July 7, 2004. This claim therefore accrued on that date, and had to be brought within one year, or by July 7, 2005. *See* A.R.S. § 12-821. This case was filed in 2009, and Plaintiff's negligence claim is therefore time-barred. *Id.* (claims not brought within one year of accrual are barred).

**B.   Plaintiff's negligence claim is also barred by the failure to timely file a notice of claim.**

---

found was increased pain) and its probable cause (the delay in operating). *Massey*, 312 F.3d at 277.

[11] He says this is the first time he could secure "sufficient medical care," unrelated to Defendants, to know of his injury and its cause. Plaintiff neglects to tell the Court, however, that he was out-of-custody for approximately one year between intermittent periods of incarceration between April 2001 and his release from County custody in September of 2002. (Doc. #1 at ¶¶ 28-35). Nor does he mention that he was out of custody for a year straight between release from County facilities at the end of September 2002, until being re-incarcerated in State facilities in September of 2003. (*Id.* at ¶ 33). Perhaps Plaintiff does not bring this to the Court's attention because he has no explanation as to why he could not, and did not, seek the independent advice he claims was pivotal to accrual during his claims much earlier than in 2008.

7

Plaintiff concedes he did not file a notice of claim within 180 days of accrual of his claims, as required by A.R.S. § 12-821.01(A). Given this concession, Plaintiff's state law claims are barred.

### 1. Defendants have not waived *any* notice of claim-related defenses.

In his Response, Plaintiff contends that Defendants waived the right to argue that Plaintiff should have filed his notice of claim directly with the Sheriff[12] and the individual members of the Board of Supervisors, but he does not contend that Defendants waived any other notice of claim-related defenses. (Doc. # 54 at 14). Out of an abundance of caution, Defendants note they properly pled the notice of claim defense twice in their Answer. In the first instance, Defendants alleged that "Plaintiff's Notice of Claim was untimely, *or otherwise met the* requirements of A.R.S. § 12-821.01." (Doc. # 32 at ¶ 12) (emphasis added). In the affirmative defense section, Defendants also alleged that "Plaintiff failed to timely and properly exhaust all administrative requirements and remedies, including, but not limited to, A.R.S. § 12-821.01(A) …." (*Id.* at ¶ D).

This language satisfies the notice pleading requirement applicable to affirmative defenses, and also was sufficient to prevent surprise, which is the purpose underlying the requirement that an affirmative defense be specifically pled. *City of Phoenix v. Linsenmeyer*, 86 Ariz. 328, 333, 346 P.3d 140, 143 (1959). Plaintiff was on notice that Defendants were challenging his satisfaction of the requirements of the notice of claim statute and therefore had only to review the statute to surmise what deficiencies were, or could be, alleged. Defendants have therefore properly raised this defense.

### III. PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM IS UNTIMELY, REGARDLESS OF THE STATUTE THE COURT APPLIES.

While Plaintiff may be correct that the limitations period for his claim pursuant to the Americans with Disabilities Act ("ADA") is found in A.R.S. § 41-1492, it is of little consequence. Plaintiff agrees that even applying A.R.S. § 41-1492, his ADA claim is subject to a two-year statute of limitations, unless there is an ongoing discriminatory

---

[12] Defendants withdraw this claim, as Plaintiff correctly observes that service on the Sheriff's Office was sufficient.

8

1  public accommodation practice, in which case the claim accrues two years after the
2  termination of such a practice. *See* A.R.S. § 41-1492.08(C).

3  In reviewing the allegations of the Complaint, Plaintiff alleges that Defendants
4  discriminated against him by excluding him from or denying him the benefits of
5  Defendants' services, programs, and activities. (Doc. #1 at ¶ 102). Plaintiff also alleges
6  Defendants failed to accommodate his chronic disease and resulting disability.
7  Ostensibly, the basis for Plaintiff's ADA claim is identical to his other claims – namely
8  that Defendants failed to treat his diabetes through diet and medication. His ADA claim
9  therefore presumably revolves around the allegation that he was excluded from the benefit
10 of adequate medical care because of his disability. This claim accrued when Plaintiff
11 knew, or should have, that he was being denied the benefits of proper treatment of his
12 diabetes as a result of disability. Even under the most charitable accrual analysis,
13 Plaintiff's ADA claim is time-barred.

14 Plaintiff struggles to save his untimely disability claim by pointing the Court to that
15 portion of the statute that tolls accrual until the time when an alleged discriminatory
16 practice was terminated. (Doc. #54 at 2). That argument fails here for at least two
17 reasons. First, Plaintiff has not alleged any ongoing discriminatory practice related to his
18 ADA claim. He alleges only that during the term of his 2001-02 incarceration in County
19 facilities he was denied the benefits of County benefits, services and programs.
20 Assuming, *arguendo*, Defendants engaged in discrimination in violation of the ADA
21 during Plaintiff's incarceration, any such discrimination would have ended when Plaintiff
22 was released from County custody at the end of his final thirty-day stint in custody in
23 September 2002. (Doc. #1 at ¶¶ 34-35).

24 Second, the case Plaintiff cites in support of his claim that his ADA claim should
25 be tolled because of ongoing discriminatory practices is distinguishable, and therefore
26 inapplicable to this case. Plaintiff cites *Bodley v. Macayo Restaurants, L.L.C.*, 546
27 F.Supp.2d 696, 700 (D. Ariz. 2008), in which the court held that the plaintiff's Title III
28 accessibility claim was not time-barred because the barrier that plaintiff pointed to as

1  precluding his accessibility existed not only from the time plaintiff began going to the
2  restaurant, but still existed as of the time the court considered dispositive motions.  In so
3  holding, the court rejected the notion that plaintiff's repeated encounter of the same
4  barriers in the restaurant over a course of twelve years worth of visits did not preclude his
5  accessibility claim, as the barrier still existed and therefore constituted an ongoing
6  discriminatory public accommodation practice of the sort that would toll accrual of his
7  claim under A.R.S. § 41-1492.08(C).  *Bodley*, 546 F.Supp.2d at 700.  The same cannot be
8  said for Plaintiff's ADA claim.  The alleged failure to provide him the same medical care
9  and treatment as other inmates ended when he was released from custody, and therefore
10 his claim is not tolled.  Consequently, it is barred by the statute of limitations, whether the
11 Court applies A.R.S. § 12-542 or § 41-1492.01(C).

**IV.     MCSO IS NOT SUSCEPTIBLE TO SUIT IN ITS OWN NAME.**

Whether MCSO is a jural entity, and therefore a proper Defendant, is not a personal jurisdiction issue.  Rather, MCSO is only a proper Defendant if it enjoys a separate and distinct legal existence.  *Williams v. City of Mesa*, 2009 WL 2568640, *2 (D. Ariz. 2009).  An action can only be maintained against "jural entities," which are those entities that may sue and be sued.  *Morgan v. Arizona*, 2007 WL 2808477, *8 (D. Ariz. 2007) (citation omitted).  Thus, county agencies that lack the power to sue and be sued are not proper defendants to a lawsuit.  *Gotbaum v. City of Phoenix*, 2008 WL 4628675, *7 (D. ARiz. 2008) (concluding the "Phoenix Police Department is a subpart of the City of Phoenix, not a separate entity for the purposes of suit").

Whether an entity possesses the power to sue and be sued must be determined under Arizona law.  Rule 17(b), Fed. R. Civ. P., provides that "[a]ctions brought by or against a county or unincorporated town shall be brought in its corporate name."  As this Court observed in *Williams*, *supra*, this Rule required the plaintiff to sue the City of Mesa, and not its police department, since Arizona law only confers a right to sue and be sued on municipal corporations – like the City of Mesa – and not its sub-entities – like the police department.  *Williams*, 2009 WL 256840, *2.  The same holds true in this case, since

constitutionally and statutorily only Maricopa County enjoys the right to sue and be sued, while MCSO does not. ARIZ. CONST. art. 14, § 1; *see also* A.R.S. §§ 11-201(A), 11-202(A); 56 Am.Jur.2d Municipal Corporations § 787 ("Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority.").

Here, Plaintiff points to no statutory authority authorizing MCSO to sue or be sued as a distinct legal entity under the circumstances presented by his lawsuit. Plaintiff's cited authority on this issue does not change the fact that MCSO is not subject to suit on Plaintiff's claims. For instance, Plaintiff cites a number of cases in which MCSO was a plaintiff, and suggests, as a result, the MCSO must be subject to suit here. But in many of those cases, MCSO is a party because the statutes implicated in those cases required the Office to act or be named. *See, e.g., MCSO v. Maricopa County Employee Merit Sys. Comm'n*, 211 Ariz. 219, 119 P.3d 1022 (2005) (in which MCSO properly appealed a determination of the Merit Commission under A.R.S. § 11-356). Because there is no statutory authority supporting naming MCSO as a distinct Defendant here, in its own name, it should be dismissed from the action. *See, e.g., Jacobs v. Port Neches Police Dep't,* 915 F.Supp. 842, 844 (E.D. Tex.1996) (holding sheriff's department was not a proper party to the suit because the county had not expressly "grant[ed] the servient agency with jural authority"); *Sullivan v. Chastain,* 2005 WL 354032, *2 (W.D. Tex. 2005) (dismissing a county constable office because "an entity without a separate jural existence is not subject to suit"); *see also Del Tufo v. Township of Old Bridge,* 650 A.2d 1044, 1046 n.1 (N.J.Super.Ct.App.Div.1995) ("'Old Bridge Township Police Department' is probably not a jural entity and is therefore probably not subject to suit in its own name.").

## VII. CONCLUSION:

Based on the foregoing arguments, Defendants MCSO and Sheriff Arpaio urge the Court to grant their Motion for Judgment on the Pleadings.

RESPECTFULLY SUBMITTED this 18th day of September, 2009.

HARPER CHRISTIAN DICHTER GRAIF, P.C.

By /s/ Erin E. Byrnes
Thomas F. Harper
Erin E. Byrnes
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
*Counsel for MCSO and Sheriff Arpaio*

I hereby certify that on September 18, 2009, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

Philip R. Higdon
Craig A. Morgan
Perkins Coie Brown & Bain, P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
*Attorneys for Plaintiff James A. Payne*

Richard P. Broder
Assistant Attorney General
177 North Church Avenue, Suite 1105
Tucson, Arizona 85701
*Attorney for State Defendants*

Laurence G. Tinsley, Jr.
Maricopa County Office of General Litigation Services
Maricopa County Administration Building
301 West Jefferson, Suite 3200
Phoenix, Arizona 85003
*Attorney for Maricopa County, the County Board of Supervisors, and CHS*

/s/ Amanda Ferguson