**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James A. Payne, an individual,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Joseph Arpaio, Maricopa County Sheriff, and Ava Arpaio, his wife; Maricopa County Sheriff's Department, a county agency; Maricopa County, a political subdivision; Fulton Brock, in his official capacity as Maricopa County Supervisor; Don Stapley, in his official capacity as Maricopa County Supervisor; Andy Kunasek, in his official capacity as Maricopa County Supervisor; Max Wilson, in his official capacity as Maricopa County Supervisor; Mary Rose Wilcox, in her official capacity as Maricopa County Supervisor; Maricopa County Correctional Health Services, a county agency; The State of Arizona; The Arizona Department of Corrections, a state agency; and Does 1 through 100,<br><br>　　　　　Defendants. | No. CV09-1195-PHX-NVW<br><br>**ORDER** |

  Plaintiff James Payne has asserted three claims against Defendants arising from diabetes-related injuries he allegedly sustained while incarcerated in Maricopa County jail and Arizona State prison between April 2001 and September 2007 due to allegedly inadequate medical care. Defendants are clustered into three groups based on representation: (1) Sheriff Joseph Arpaio, his wife Ava Arpaio, and Maricopa County

Sheriff's Office (hereinafter collectively referred to as "Arpaio/Maricopa County Sheriff's Office"); (2) Maricopa County, Maricopa County Correctional Health Services, and Supervisors Brock, Stapley, Kunasek, Wilson, and Wilcox (hereinafter collectively referred to as "Other County Defendants"); and (3) the State of Arizona and the Arizona Department of Corrections (hereinafter collectively referred to as "State Defendants"). Payne has asserted a claim under 42 U.S.C. § 1983 against Arpaio/Maricopa County Sheriff's Office and the Other County Defendants for violations of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Payne has also asserted claims against all defendants for violations of 42 U.S.C. § 12132 and for negligence.

Now pending before the Court is Arpaio/Maricopa County Sheriff's Office's Motion for Judgment on the Pleadings (doc. # 42), seeking dismissal of all claims asserted against Arpaio/Maricopa County Sheriff's Office. Also pending before the Court is the Other County Defendants' Joinder in Arpaio/Maricopa County Sheriff's Office's Motion for Judgment on the Pleadings and Motion for Judgment on the Pleadings (doc. # 44), seeking a dismissal of all claims asserted against the Other County Defendants.

**I.    Legal Standard**

Both motions are for judgment on the pleadings under FED. R. CIV. P. 12(c), which are assessed under the standard applicable to a FED. R. CIV. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). Generally, only the face of the complaint may be considered. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, the Court may also consider documents that were attached to the complaint as exhibits or were "referenced extensively" in the complaint and "accepted by all parties as authentic." *Id.* In deciding a motion for judgment on the pleadings, the Court accepts all allegations of the non-moving party as true. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is only proper if the

moving party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.*

## II.  Facts Presumed True

Considering the Complaint (doc. # 1), Payne's Notice of Claim, attached to the Complaint as Exhibit 1, and the grievance letters, Motion to Continue, and Sentencing Memorandum submitted by Arpaio/Maricopa County Sheriff's Office as exhibits to their Motion for Judgment on the Pleadings (doc. # 54), the facts are as follows.[1] In 1983, Payne was diagnosed with Type I diabetes, a chronic disease that qualifies as a disability under the Americans with Disabilities Act of 1990. As a diabetic, Payne requires a consistent insulin dosage and food regimen to maintain a healthy blood-sugar level. This includes a particular dosage of insulin and the opportunity to eat a special diet within

---

[1] In their Reply Memorandum (doc. # 62), Arpaio/Maricopa County Sheriff's Office moved to strike the materials Payne submitted with his Joint Response to County Defendants' Separate Motions for Judgment on the Pleadings (doc. # 54) on the ground that those materials were not attached to nor referenced by the Complaint (doc. # 1) or the Notice of Claim. Generally, to avoid converting a motion for judgment on the pleadings into a motion for summary judgment, the Court may only consider the face of the complaint. *See* FED. R. CIV. P. 12(c); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, the incorporation by reference doctrine allows the Court to consider any exhibits attached to the complaint as well as any documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court may also "take judicial notice of matters of public record" and consider them without converting the motion into one for summary judgment. *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008).

Here, the additional materials Payne submitted with his Joint Response (doc. # 54) were not attached to nor referenced by the Complaint (doc. # 1). As such, the Court will not consider these materials for purposes of judgment on the pleadings. Therefore, Arpaio/Maricopa County Sheriff's Office's motion to strike is denied as moot.

As for the materials submitted with Arpaio/Maricopa County Sheriff's Office's Motion for Judgment on the Pleadings (doc. # 42), although the grievance letters were not referenced by the Complaint itself, they were referenced in the Notice of Claim, which was attached to the Complaint as an exhibit, and Payne has not questioned their authenticity. Therefore, the Court will consider these. The Court will also consider the motion to continue and sentencing memorandum, which constitute public records of which the Court may take judicial notice.

thirty minutes of receiving the insulin. Short-term failure to maintain a healthy blood-sugar level causes Payne to experience severe hypoglycemic and hyperglycemic episodes, during which he lapses into states of incoherence or even unconsciousness. Long-term failure to maintain a healthy blood-sugar level can cause severe and permanent physical deterioration and disability.

Around April 2001, Payne was temporarily incarcerated in Maricopa County's Durango jail facility and was eventually transferred to Maricopa County's Madison Street jail facility. Payne remained at the Madison Street jail facility until July 10, 2001, when he was sentenced to probation and released. Around September 2001, Payne was again incarcerated in the Madison Street jail facility, where he remained until he was transferred to the Arizona State Prison Complex in Florence, Arizona ("Florence prison facility") in April 2002. Payne remained at the Florence prison facility until September 2002, at which point he was transferred back to the Madison Street jail facility, where he remained for another 30 days before being released. In September 2003, Payne received a second sentence based on the incident that resulted in his first sentence, and was again incarcerated in the Florence prison facility, where he remained until his release in September 2007.

While incarcerated in the Maricopa County jail facilities, Payne did not receive insulin in accordance with his prescribed dosage, and the administration of his insulin injections was unpredictable, which prevented him from coordinating his insulin and food intake. In the instances he was able to coordinate the two, the food was moldy, rotten, contained insects, and contained an unhealthy variety of carbohydrates. At some point, Payne was prescribed a diabetic diet, but he did not always receive it. As a result of these practices, Payne often experienced severe hypoglycemic and hyperglycemic episodes, during which he experienced incoherence or even unconsciousness. He often did not receive medical care from jail officials during these episodes and was often ignored or sometimes punished when his diabetes-induced inability to respond was mistaken for

voluntary refusal to respond. Payne experienced similar conditions while incarcerated in the Florence prison facility.

Payne complained about the inadequate medical treatment on several occasions. In his May 16, 2004 grievance letter, he complained about a county detention officer's failure to respond to his hypoglycemic episode and recommended that such officers be trained to handle these situations so as "to prevent irreversible complications or even death." In his June 2, 2004 grievance letter, Payne referred to the American Diabetes Association's published guidelines for correctional facilities, which indicate that later complications may arise from lack of treatment. Payne also referred to himself as a "brittle diabetic who may not have long to live" in a motion that he filed in an unrelated criminal action on March 8, 2004, and told the court, in a sentencing memorandum filed on July 7, 2004, that he "does not receive the nutrition and proper amount of insulin necessary to prevent him from going into diabetic comas in his jail cell." In a letter accompanying the sentencing memorandum, a reference states that Payne's "eyesight has seriously deteriorated" and "he has lost much use of his hand during his recent stay at the Madison [S]treet jail." Finally, in a second letter accompanying the sentencing memorandum, Payne's ex-wife states that "[w]hile in county jail his medical condition became worse" and "[h]is eyesight has deteriorated and [he] may end up blind."

In August and September 2008, after his release from the Florence prison facility in September 2007, Payne sought medical care and was diagnosed with severe hypoglycemia, possible gastroparesis, mild verbal recall deficit, peripheral and autonomic neuropathy, and a shoulder injury, sustained during a hypoglycemic episode, that requires surgery. All of these conditions were caused by Payne's inability to maintain his blood-sugar levels during his incarceration.

On or around January 20, 2009, pursuant to A.R.S. § 12-821.01, Payne delivered his Notice of Claim to Maricopa County Sheriff's Office, the Maricopa County Board of Supervisors, Maricopa County Correctional Health Services, Arizona Department of Corrections, and Office of the Arizona Attorney General. The Notice of Claim states that

it "serve[s] as notice, pursuant to A.R.S. 12-821.01, of Mr. Payne's claims against Maricopa and ADOC," and seeks a settlement from both Maricopa and Arizona Department of Corrections. However, neither Sheriff Arpaio nor the individual Supervisors are included within the definition of "Maricopa" and neither is referred to at all in the body of the Notice of Claim.

**III.   Analysis**

In their respective motions for judgment on the pleadings, both Arpaio/Maricopa County Sheriff's Office and the Other County Defendants raise defendant-specific and claim-specific challenges. The defendant-specific challenges are as follows: (1) all claims against Maricopa County Sheriff's Office and Maricopa County Health Services must be dismissed because both are non-jural entities; and (2) all claims against Sheriff Arpaio should be dismissed because Sheriff Arpaio "does not bear any legal responsibility for healthcare in the Maricopa County jails."

The challenges specific to Payne's § 1983 claim are as follows: (1) the § 1983 claim is barred by the statute of limitations; (2) the § 1983 claim against the individual Supervisors fails to allege sufficient links between them and Payne's injury; and (3) the § 1983 claim against all of the Other County Defendants fails to allege a sufficiently culpable state of mind for a claim upon which relief can be granted. The only challenge specific to the ADA claim is that it is barred by the statute of limitations. The challenges specific to the negligence claim are as follows: (1) the claim is barred by the statute of limitations; and (2) the claim is barred as to all county defendants because Payne did not comply with Arizona's notice-of-claim statute.

Because the § 1983 claim is time-barred, the other § 1983 challenges are not addressed. The remaining challenges are addressed in turn.

///

### A. Defendant-Specific Challenges

#### 1. Maricopa County Sheriff's Office and Maricopa County Health Services are non-jural entities.

Arpaio/Maricopa County Sheriff's Office and the Other County Defendants maintain that all claims asserted against Maricopa County Sheriff's Office and Maricopa County Correctional Health Services must be dismissed because both Maricopa County Sheriff's Office and Correctional Health Services are non-jural entities that are incapable of being sued in their own name. According to FED. R. CIV. P. 17(b), the capacity of an entity other than an individual or corporation to sue or be sued is governed by "the law of the state in which the district court is held . . . ." Therefore, Arizona law determines the capacity of both Maricopa County Sheriff's Office and Correctional Health Services to be sued in this case.

In Arizona, a government entity may be sued only if the legislature has given that entity the power to be sued. *See Schwartz v. Superior Court*, 186 Ariz. 617, 619, 925 P.2d 1068, 1070 (Ct. App. 1996); *see also* 56 AM. JUR. 2D *Municipal Corporations, Counties, Other Political Subdivisions* § 787 ("[D]epartments and subordinate entities of . . . counties . . . that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority."). A.R.S. § 11-201(A)(1) states that "[t]he powers of a county shall be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law" and that these powers include the power to "[s]ue and be sued." Therefore, it is clear that the Arizona legislature has given Maricopa County the power to be sued. However, no Arizona statute confers that power on Maricopa County Sheriff's Office or Correctional Health Services as separate legal entities.

##### a. Maricopa County Sheriff's Office is a non-jural entity.

State case law on this precise issue is sparse to non-existent. In *Flanders v. Maricopa County*, the court noted, without deciding the issue, that Maricopa County Sheriff's Office had been dismissed as a non-jural entity after the verdict was returned.

1  203 Ariz. 368, 375 n.5, 53 P.3d 837, 844 n.5 (Ct. App. 2002).  No other state court
2  opinions have addressed whether Maricopa County Sheriff's Office is an entity capable of
3  being sued.

4  The decisions in this court have been divided.  *See De Jesus Ortega Melendres v.
5  Arpaio*, 598 F. Supp. 2d 1025, 1039 (D. Ariz. 2009) (denying dismissal of Maricopa
6  County Sheriff's Office after noting that there is "no consensus" within the District of
7  Arizona on whether Maricopa County Sheriff's Office is a non-jural entity); *see also*
8  *Ekweani v. Maricopa County Sheriff's Office*, No. 08-1551, 2009 WL 976520, at *2,
9  2009 U.S. Dist. LEXIS 30641, at *5 (D. Ariz. Apr. 9, 2009) (dismissing Maricopa County
10 Sheriff's Office as a non-jural entity); *Wilson v. Maricopa County*, No. 04-2873, 2005
11 WL 3054051, at *2, 2005 U.S. Dist. LEXIS 28021, at *6 (D. Ariz. Nov. 15, 2005)
12 (same).

13 However, there is a consensus that city police departments are non-jural entities
14 that may not be sued in their own names.  *See Williams v. City of Mesa Police Dep't*, No.
15 09-1511, 2009 WL 2568640, at *3, 2009 U.S. Dist. LEXIS 80391, at *8 (D. Ariz. Aug.
16 18, 2009) (dismissing the City of Mesa Police Department as a non-jural subdivision of
17 the City of Mesa); *DeGroote v. City of Mesa*, No. 07-1969, 2009 WL 485458, at *1, 2009
18 U.S. Dist. LEXIS 15082, at *4 (D. Ariz. Feb. 26, 2009) (same); *Gotbaum v. City of*
19 *Phoenix*, 617 F. Supp. 2d 878, 886 (D. Ariz. 2008) (dismissing the City of Phoenix Police
20 Department as a non-jural subdivision of the City of Phoenix).

21 Courts that have found Maricopa County Sheriff's Office non-jural have relied
22 primarily on the lack of a statute conferring the power to sue and be sued.  *See Ekweani*,
23 2009 WL 976520, at *2, 2009 U.S. Dist. LEXIS 30641, at *5; *Wilson*, 2005 WL
24 3054051, at *1, 2005 U.S. Dist. LEXIS 28021,  at *4.  The court that inferred jural status
25 did so from the fact that Maricopa County Sheriff's Office has sued and been sued
26 without objection.  *De Jesus Ortega Melendres*, 598 F. Supp. 2d at 1039.  The lack of
27 objection to Maricopa County Sheriff's Office's inconsistent conduct in prior actions
28 dispels their precedential value, and there is no doctrine of jural status by estoppel, at

least without detrimental reliance in the case at hand. Though there is room for debate, this Court concludes that the dispositive factor here is the Arizona legislature's failure to confer separate jural status on Maricopa County Sheriff's Office. Therefore, all claims against Maricopa County Sheriff's Office will be dismissed. This ruling is of no practical consequence, for Maricopa County Sheriff's Office brings nothing more to this action against Maricopa County.

### b. Maricopa County Correctional Health Services is a non-jural entity.

As with Maricopa County Sheriff's Office, no state court opinions have addressed whether Maricopa County Correctional Health Services is an entity amenable to suit. The decisions in this court have found Correctional Health Services a non-jural subdivision of Maricopa County. *See Diaz v. Arpaio*, No. 06-1542, 2008 WL 4369272, at *5, 2008 U.S. Dist. LEXIS 81372, at *12 (D. Ariz. Sept. 25, 2008) (addressing plaintiff's claim only against Maricopa County, because Correctional Health Services "is operated by Maricopa County"); *Moynihan v. Arpaio*, No. 06-0467, 2007 WL 1100331, at *2, 2007 U.S. Dist. LEXIS 27331, at *5 (D. Ariz. Apr. 6, 2007) (concluding that Correctional Health Services is a non-jural entity). Because no statute, general or specific, gives Correctional Health Services jural status, all claims against Correctional Health Services will be dismissed. This ruling too is of no practical consequence.

### 2. Sheriff Arpaio is liable for medical care in the county jails.

Sheriff Arpaio argues that he is not a proper defendant because he has no duty to provide or maintain healthcare in county jails, and that Maricopa County is the proper defendant for claims based on inadequate medical care in county jails. Arpaio points to statutory provisions that govern the respective powers and duties of the sheriff and the county board of supervisors. The sheriff's powers and duties include the duty to "[t]ake charge of and keep the county jail . . . and the prisoners in the county jail." A.R.S. § 11-441(A)(5); *see also* A.R.S. § 31-101 ("The common jails in the several counties . . . shall be kept by the sheriffs of the counties in which they are respectively located."). Both

statutory provisions are silent as to any specific duty to provide and monitor medical care within the jails, and there is no statutory provision that expressly shields sheriffs from liability for inadequate medical care in county jails. Stopping here, the Court's best reading of Arizona law is that keeping prisoners in county jails includes providing necessary medical care and that sheriffs are responsible and liable for that care.

But it does not stop there. The board of supervisors "may provide for the hospitalization and medical care of the sick in the county and . . . persons under the supervision of a county corrections agency." A.R.S. § 11-291(A). The statute may or may not require Maricopa County to provide medical care to inmates, and other judges of this court have interpreted A.R.S. § 11-291(A) to mean that Maricopa County is in fact "responsible" for providing medical care to county jail inmates. *See Conroy v. Avalos*, No. 08-210, 2008 WL 1989788, at *2, 2008 U.S. Dist. LEXIS 40345, at *6 (D. Ariz. May 5, 2008); *see also Rogers v. Maricopa County Sheriff's Office*, No. 07-641, 2008 WL 898721, at *2, 2008 U.S. Dist. LEXIS 29725, at *4 (D. Ariz. Mar. 31, 2008) ("Although Arizona places responsibility for operating county jails by law upon the county sheriff, the county is responsible for the provision of medical care to inmates."). In any event, Maricopa County has undertaken the medical care for county jail inmates, so the County is liable for that care, whether or not it would be liable without that affirmative undertaking.

The question now is whether Maricopa County's undertaking of medical care in the county jails frees the Sheriff from liability for actionable care. There is a preface and a post-script to answering this point of Arizona law. The preface is that we are instrument-flying with no visible horizon of state law. This Court's best answer in the haze is that absolution from liability is a grave matter that cannot be inferred comfortably from silence. *See Flanders*, 203 Ariz. at 378, 53 P.3d at 847 (noting generally that Sheriff Arpaio is the final policymaker for Maricopa County jails). Moreover, Sheriff Arpaio has admitted that he is required to provide adequate medical care to pretrial detainees in county jails. *See Graves v. Arpaio*, No. 77-0479, 2008 WL 4699770, at *35,

2008 U.S. Dist. LEXIS 85935, at *93 (D. Ariz. Oct. 22, 2008); Verified Complaint for Declaratory Judgment and Injunctive Relief at 10, *Arpaio v. Maricopa County Board of Supervisors*, No. CV2009-028910 (Super. Ct. Maricopa County filed Sept. 9, 2009) ("The Sheriff has a statutory obligation to provide medical services for inmates."). Therefore, Payne's claims against Sheriff Arpaio will not be dismissed merely because they are predicated on inadequate medical care.

The post-script is that, if this Court is misreading both the horizon and the instruments, it may be crashing only a simulator, not a real aircraft. Maricopa County pays its own debts, and it funds the Sheriff's official functions. Whether the County or the Sheriff is liable is of no practical consequence. One or both paths must be good, and they both lead to the same money.

### B. Statute of Limitations Challenge to 42 U.S.C. § 1983 Claim Against All County Defendants

When the statute of limitations forms the basis of a motion to dismiss for failure to state a claim, the motion can only be granted "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). The complaint cannot be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

Section 1983 of Title 42, U.S.C., does not include its own statute of limitations. *TwoRivers*, 174 F.3d at 991. Therefore, federal courts apply the statute of limitations governing personal injury claims in the forum state. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *TwoRivers*, 174 F.3d at 991. In Arizona, the limitations period for personal injury claims is two years. *Id.; see also* A.R.S. § 12-542 (providing that actions for personal injury must be commenced within two years after the cause of action accrues). Payne

filed his Complaint (doc. # 1) on June 3, 2009. Therefore, his cause of action had to accrue no earlier than June 3, 2007 for his claim to be timely.

Although the statute of limitations applicable to § 1983 claims is borrowed from state law, federal law continues to govern when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *TwoRivers*, 174 F.3d at 991. Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*; *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Furthermore, the claim accrues "even though the full extent of the injury is not then known or predictable" because otherwise "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.

There is some debate about what constitutes the "injury" resulting from deliberate indifference to a serious medical need. Two empirically distinct injuries are: (1) lack of medical care that is cruel and unusual punishment and (2) the bodily injury that flows from the lack of medical care. *See Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991) (noting generally that civil rights claims under § 1983 accrue when the "plaintiff knows or should know that his or her constitutional rights have been violated."). At least two Ninth Circuit decisions suggest the relevant injury is the constitutional injury, such that the claim accrues when the plaintiff knows or should know of the acts of deliberate indifference. *See Actkinson v. Vargo*, 284 Fed. Appx. 469, 471 (9th Cir. 2008); *TwoRivers*, 174 F.3d at 991-92.

In *TwoRivers*, a prisoner sued prison employees under § 1983 for deliberate indifference to his serious medical needs after surgery to remove a cancerous growth. 174 F.3d at 990. He alleged post-operative treatment in bleach baths that were "encrusted in fecal matter and what appeared to be scabs from other patients." *Id.* Because he "knew or had reason to know of the ADOC employees' deliberate indifference to his medical needs by September 14, 1994," and because he filed his suit on October 8, 1996,

plaintiff's § 1983 claim would have been barred by the two-year statute of limitations but for a tolling statute that saved the claim. *Id.* at 992.

In *Actkinson*, a prison doctor allegedly ignored complaints of an allergic reaction to medication the doctor had prescribed to treat herpetic keratitis in the plaintiff's eye, and failed to follow treatment orders given by an emergency room doctor, which ultimately caused plaintiff's eyesight to worsen. 284 Fed. Appx. at 470-71. The Ninth Circuit stated, "In a suit . . . asserting an 'injury' of deliberate indifference, the claim . . . accrues when the prisoner 'knew or had reason to know of the [prison] employees' deliberate indifference to his medical needs.'" *Id.* at 471 (citing *TwoRivers*, 174 F.3d at 992). The court ultimately reversed summary judgment in favor of the defendant, noting a genuine issue of material fact as to when the plaintiff knew or should have known of these acts of indifference. *Id.* at 471.

However, other Ninth Circuit authority suggests the relevant injury is the bodily harm that results from the deliberate indifference to the plaintiff's serious medical needs. Payne relies upon this line of cases, which applies the "discovery rule." Under that rule, the limitations period does not begin until the plaintiff "has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'" *Bibeau v. Pac. Nw. Research Found., Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)); *see also McDonald v. Macabuhay*, No. CV 07-1022-PHX-GMS, 2009 WL 2432833, at *6, 2009 U.S. Dist. LEXIS 73851, at *14 (D. Ariz. Aug. 10, 2009) (citing *Bibeau*, 188 F.3d at 1108).

In *Bibeau*, the plaintiff had voluntarily participated in medical experiments testing the effect of radiation on human testicular function while he was incarcerated in a state prison in Oregon. 188 F.3d at 1107. Some thirty years later, he came across a news report suggesting that the experiments may have been the cause of various physical ailments he had suffered since his release from prison. *Id.* The plaintiff sued the foundation that conducted the experiments, asserting various federal and state claims predicated largely on "conspiracy to fraudulently induce him to participate in the

- 13 -

experiments . . . ." *Id.* Although not mentioned in the Ninth Circuit opinion, the plaintiff's federal claims included a § 1983 claim of cruel and unusual punishment based on deliberate indifference to a serious medical need. *See* Reply Brief for Appellants at 8 n.10, *Bibeau v. Pac. Nw. Research Found., Inc.*, 188 F.3d 1105 (9th Cir. 1999) (No. 97-35825). In deciding when the plaintiff's claims accrued, the Ninth Circuit applied the "discovery rule" and held that there were genuine issues of material fact as to when the plaintiff knew or should have known that the experiments were the cause of his physical conditions. *Id.* at 1109.

In *McDonald*, the plaintiff asserted a § 1983 deliberate indifference claim against an Arizona Department of Corrections physician for failing to timely follow up on abnormal liver function tests and for failing to timely diagnose his hepatitis. 2009 WL 2432833, at *1, 2009 U.S. Dist. LEXIS 73851, at *1-2. The plaintiff alleged that the physician's deliberate indifference caused him to develop "end-stage liver disease with painful side effects and a decreased life expectancy." *Id.* While the defendant contended that the plaintiff's claim was barred because he knew or should have known of his injuries when he was diagnosed with hepatitis in April 2005, the plaintiff insisted that he did not know of his injuries and their cause until he was diagnosed with cirrhosis of the liver in July 2006. 2009 WL 2432833, at *6, 2009 U.S. Dist. LEXIS 73851, at *14-15. Relying on *Bibeau*, the court applied the "discovery rule" and held that the claim accrued in July 2006 when he discovered that he had cirrhosis of the liver, because "he had no reason to know that any of Defendant's actions or inactions caused him any injury" until then. 2009 WL 2432833, at *6, 2009 U.S. Dist. LEXIS 73851, at *15.

Thus the Ninth Circuit authority speaks in different voices on what injury starts the running of the statute of limitations for a § 1983 claim alleging deliberate indifference to a serious medical need. Those voices may not be out of harmony, however, if each is heard for the facts of its own case. In the usual case, the denial of care and the bodily injury have occurred together, and so the claim is brought for both. In that case, either formulation of the accrual covers both injuries even if not descriptive of both. But it is

- 14 -

treacherous to read judicial language for what it is not talking about. In some cases, deliberate indifference to a serious medical need is immediately actionable, though no bodily injury has yet occurred. The right to sue for prevention accrues and does not expire as long as the deliberate indifference to care continues. But where the relief sought is damages for bodily injury, the clock starts when the bodily injury is known or should be known, and that right to sue will expire. Both strands of Ninth Circuit authority are right for the cases they fit, but neither strand ties up the jurisprudential universe.

If the deliberate indifference to medical care is the relevant injury for purposes of accrual, Payne's § 1983 claim accrued no later than October 2002, when he was released from county custody and last subjected to the county's lack of diabetes care. But Payne is suing for bodily injury from lack of care, which he argues is separated in time from the causal deliberate indifference to his serious medical needs, so the *Bibeau* rule of accrual fits this case better. Still, under that rule, his § 1983 claim accrued no later than 2004. As is evident from the letters accompanying the sentencing memorandum submitted by Payne in an unrelated criminal matter, Payne knew in 2004 that his eyesight had worsened, that he had lost use of one of his hands, and that these conditions were caused by the treatment he had received while in county custody. Payne maintains that his claim did not accrue until August 2008, when he was diagnosed with severe hypoglycemia, possible gastroparesis, mild verbal recall deficit, peripheral and autonomic neuropathy, and a shoulder injury that requires surgery. However, his increased awareness comes too late under the principle that a plaintiff need not know the full extent of his injuries for the statute of limitations to begin to run. He need only be aware of some damage and who caused that damage. Therefore, because Payne's § 1983 claim to compensate for bodily injury accrued long before June 3, 2007, the claim is time-barred.

### C. Statute of Limitations Challenge to ADA Claim Against All County Defendants

The Americans with Disabilities Act consists of several titles, including Title I on "Employment," 42 U.S.C. §§ 12111-12117; Title II on "Public Services," 42 U.S.C. §§

12131-12134; and Title III on "Public Accommodations and Services Operated by Private Entities," 42 U.S.C. §§ 12181-12189. Payne's 42 U.S.C. § 12132 claim arises under Title II. Because the ADA does not provide a governing statute of limitations, courts must apply the statute of limitations of the most analogous state law. *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002); *Bodley v. Macayo Rests., LLC*, 546 F. Supp. 2d 696, 700 (D. Ariz. 2008); *Madden-Tyler v. Maricopa County*, 189 Ariz. 462, 464, 943 P.2d 822, 824 (Ct. App. 1997). Relying on *Bodley*, Payne argues that the most appropriate statute of limitations is A.R.S. § 41-1492.08(C), governing the Arizonans with Disabilities Act. Arpaio/Maricopa County Sheriff's Office, on the other hand, rely on *Madden-Tyler* for the proposition that the applicable statute of limitations is A.R.S. § 12-542, the two-year statute governing personal injury actions in Arizona.

The Arizonans with Disabilities Act was intended to be analogous to Title II of the ADA, because A.R.S. § 41-1492.01(A) provides that all buildings and facilities used by public entities must conform to Title II of the ADA. However, as the court noted in *Madden-Tyler*, Title II of the ADA incorporates the same rights, remedies, and procedures as the Rehabilitation Act. 189 Ariz. at 468, 943 P.2d at 828; *see also* 42 U.S.C. § 12133. Because the state statute of limitations governing personal injury actions applies to actions brought under section 504 of the Rehabilitation Act, the court concluded that A.R.S. § 12-542, Arizona's two-year statute of limitations for personal injury actions, applies to claims arising under 42 U.S.C. § 12132. *Id.* at 466-68, 943 P.2d at 826-28.

In this case, which statute of limitations applies is of little significance because Payne's ADA claim is time-barred even under the more generous limitations for the Arizonans with Disabilities Act. That statute provides, "A person may file a civil action in superior court not later than two years after the occurrence or the termination of an alleged discriminatory public accommodation practice . . . whichever occurs last, to obtain appropriate relief with respect to the discriminatory public accommodation

practice . . . ." A.R.S. § 41-1492.08(C). Under that statute, Payne argues his ADA claim did not accrue until Defendants' discriminatory practices terminated.

Payne argues that his ADA claim has not run under this statute because the county practices concerning diabetes care of other persons still in county custody have not yet terminated. Payne relies on the inapposite case of *Bodley*, where the plaintiff challenged architectural barriers in a restaurant, arguing that they impeded his movement in the restaurant and therefore discriminated against him on the basis of his disability. 546 F. Supp. 2d at 698. The court found that the restaurant's "discriminatory practices" had not terminated because the architectural barriers still existed at the time of the ruling and continued to discourage or prevent the plaintiff from visiting the restaurant. *Id.* at 700, 702. This reasoning is sound for an architectural barrier, which is a physical thing that prevents a disabled person from moving within a building for as long as the barrier exists, regardless of whether the plaintiff makes multiple attempts to use the building. The discrimination does not cease as to that plaintiff until the barrier is removed.

Here a jail inmate experiences discriminatory medical treatment practices only for as long as he is in jail custody. The discrimination ceases as to an individual plaintiff when that plaintiff is released from custody. To extend *Bodley* to this case would allow a money damage action as long as parallel wrongs are inflicted on other persons. That would defeat the entire purpose of a statute of limitations. Therefore, the County's practices "terminated" as to Payne when he was released from jail in October 2002, rendering his ADA claim time-barred even under A.R.S. § 41-1492.08(C).

### D. Negligence Claim

#### 1. Statute of Limitations

The limitations period for Payne's state-law negligence claim against public entities or public employees is one year. A.R.S. § 12-821. A claim accrues when "the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or

contributed to the damage." A.R.S. § 12-821.01(B); *Dube v. Likins*, 216 Ariz. 406, 422-23, 167 P.3d 93, 109-10 (Ct. App. 2007).

This accrual standard, which is a version of the "discovery rule," is based on the notion that it is "unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 589, 898 P.2d 964, 967 (1995) (describing the rationale behind the "discovery rule" in the context of interpreting A.R.S. § 12-548); *see also Jane Doe One v. Garcia*, 5 F. Supp. 2d 767, 772 (D. Ariz. 1998) (noting that A.R.S. § 12-821.01(B) is an iteration of the "discovery rule"). However, plaintiffs are charged with knowledge of an actionable injury when they first discover or should have discovered "some damage, not necessarily the full extent of the damage." *Louisiana-Pacific Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1580-81 (9th Cir. 1994) (citing with approval *Steele v. Organon, Inc.*, 43 Wash. App. 230, 234, 716 P.2d 920, 922 (1986) (deciding that the full extent of injuries caused by medical malpractice need not be known before the statute of limitations begins to run)).

Because Payne filed his Complaint (doc. # 1) on June 3, 2009, his negligence claim must have accrued no earlier than June 3, 2008, to be timely. Payne's negligence claim accrued and ran long before then for the same reasons his § 1983 claim did. Therefore, Payne's negligence claim against all county defendants will be dismissed as time-barred.

### 2.     Notice of Claim

Alternatively, Arpaio/Maricopa County Sheriff's Office and the individual Supervisors argue that Payne's negligence claim should be barred as to them for failing to comply with Arizona's notice-of-claim statute. Section 12-821.01(A) of the Arizona Revised Statutes states that in order to preserve the right to sue, "[p]ersons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service . . . within one hundred eighty days after the cause of

1  action accrues." The purpose of the notice requirement is to allow the public entity or
2  employee to "investigate and assess liability," to "permit the possibility of settlement
3  prior to litigation," and to "assist the public entity in financial planning and budgeting."
4  *Falcon v. Maricopa County*, 213 Ariz. 525, 527, 144 P.3d 1254, 1256 (2006) (citing
5  *Martineau v. Maricopa County*, 207 Ariz. 332, 335-36, 86 P.3d 912, 915-16 (Ct. App.
6  2004)).

7  While A.R.S. § 12-821.01 applies to all state law claims, it does not apply to the
8  federal claims. *See Felder v. Casey*, 487 U.S. 131, 138 (1988) (holding that Wisconsin's
9  notice-of-claim statute did not apply to § 1983 claims brought in state or federal courts);
10 *Finley v. Giacobbe*, 827 F. Supp. 215, 219 (S.D.N.Y. 1993) (declining to apply New
11 York's notice-of-claim statute to ADA claims); Armen H. Merjian, *AIDS, Welfare, and
12 Title II of the Americans with Disabilities Act*, 16 YALE L. & POL'Y REV. 373, 392 n.98
13 (1998) (noting that state notice-of-claim statutes do not apply to ADA claims).
14 Therefore, for Payne to assert a valid common law negligence claim, he must have filed a
15 notice of claim with the appropriate public entity or employee within 180 days of when
16 his negligence claim accrued.

17 Payne's claim is alternatively barred for failing to timely comply with A.R.S. § 12-
18 821.01(A) because his negligence claim accrued no later than 2004 and he did not file his
19 Notice of Claim with the various county defendants until January 2009. If Payne's
20 redundant damage claim against the individual Supervisors in their official capacities
21 were timely and somehow mattered, it would also be barred by the failure to name them
22 in the Notice of Claim. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, 351, 160 P.3d
23 223, 230 (Ct. App. 2007) (affirming dismissal of a defendant who was not referred to in
24 the body of the notice of claim or in the demand for settlement); *see also Larez v. Los
25 Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a governmental officer in his
26 official capacity is equivalent to a suit against the governmental entity itself.").

27 IT IS THEREFORE ORDERED that both Arpaio/Maricopa County Sheriff's
28 Office's Motion for Judgment on the Pleadings (doc. # 42) and the Other County

Defendants' Joinder in Arpaio/Maricopa County Sheriff's Office's Motion for Judgment on the Pleadings and Motion for Judgment on the Pleadings (doc. # 44) are granted.

DATED this 4th day of November, 2009.

_Neil V. Wake_
United States District Judge