1  **WO**

6                 IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

9   James A. Payne, an individual,          )   No. CV-09-1195-PHX-NVW
                                            )
10              Plaintiff,                   )   **ORDER**
                                            )
11  vs.                                      )
                                            )
12  State of Arizona; Arizona Department of )
    Corrections, a state agency; and Does 1 )
13  through 100,                             )
                                            )
14                                           )
                Defendants.                  )
15                                           )
                                            )
16  _____)

17         Before the Court is Defendant State of Arizona's Motion to Dismiss II (doc. # 89),

    treated as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

18  **I.    Legal Standard**

19         A motion for judgment on the pleadings is assessed under the standard applicable

20  to a motion to dismiss for failure to state a claim upon which relief may be granted under

21  Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Aldabe v. Aldabe*, 616 F.2d

22  1089, 1093 (9th Cir. 1980). Generally, only the face of the complaint and any attached

23  exhibits may be considered. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

24  However, under the incorporation by reference doctrine, any documents "whose contents

25  are alleged in [the] complaint and whose authenticity no party questions" may also be

26  considered. *Id.* All of the plaintiff's factual allegations are accepted as true and the

27  pleadings are construed in the light most favorable to the plaintiff. *Id.* at 1072; *Hal Roach*

*Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is appropriate only where the moving party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.*

## II. Factual Allegations

The following allegations are derived from the Complaint (doc. # 1) and the Notice of Claim (doc. # 1-1), attached to the Complaint as an exhibit. In 1983, Plaintiff James Payne was diagnosed with Type I diabetes, treatment of which requires a consistent insulin dosage and food regimen to maintain a healthy blood-sugar level. This includes a particular dosage of insulin and the opportunity to eat a special diet within thirty minutes of receiving the insulin. Short-term failure to maintain a healthy blood-sugar level causes Payne to experience severe hypoglycemic and hyperglycemic episodes, during which he lapses into states of incoherence or even unconsciousness. Long-term failure to maintain a healthy blood-sugar level can cause severe and permanent physical deterioration and disability.

Payne was incarcerated in the Arizona State Prison Complex in Florence, Arizona ("Florence prison facility") in April 2002, where he remained until September 2002. In September 2003, he received a second sentence based on the incident that resulted in his first sentence, and was again incarcerated in the Florence prison facility, where he remained until his release in September 2007.

The State of Arizona and the Arizona Department of Corrections were aware of Payne's disability but were deliberately indifferent to accommodating his needs and disregarded the high risk that Payne would develop long-term complications related to his diabetes. Upon arrival at the Florence prison facility, Payne received a physical exam in which the examiner initially failed to diagnose his diabetes. He was also denied a "diabetic meal card" for approximately a year and received insulin and food at irregular intervals, preventing him from coordinating his insulin and food intake. When he was able to coordinate the two, the food-to-insulin ratio was unhealthy and the food fluctuated

in carbohydrate content, rendering control of his disease near impossible. His requests for glucose tablets were often unmet due to lack of supply and when he did receive them, the dosage was usually insufficient. As a result of these practices, Payne's blood sugar level was rarely within medically acceptable ranges. He often suffered severe hypoglycemic and hyperglycemic episodes, during which he experienced incoherence or sometimes even unconsciousness. During one episode, he suffered a seizure and sustained a serious shoulder injury.

In August and September 2008, after his release from the Florence prison facility, Payne sought medical care and was diagnosed with severe hypoglycemia, possible gastroparesis, mild verbal recall deficit, peripheral and autonomic neuropathy, and a shoulder injury that requires surgery. All of these conditions were caused by Payne's inability to maintain his blood-sugar levels during his incarceration.

On June 3, 2009, Payne sued Defendants State of Arizona and Arizona Department of Corrections for negligence and for violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, by failing to reasonably accommodate his diabetes while he was incarcerated. On February 18, 2010, the Court dismissed both claims against Defendant Arizona Department of Corrections for lack of jural status and dismissed the negligence claim against the State as time-barred. (Doc. # 88.) The State now seeks dismissal of the remaining ADA claim for failure to state a claim upon which relief can be granted.

### III. Analysis

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under 42 U.S.C. § 12132, a plaintiff must allege that (1) he is "an individual with a disability," (2) he is "otherwise qualified to participate in or receive the benefits of some public entity's services, programs, or activities," (3) he was "either excluded from participation in or denied the

benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity," and (4) the exclusion, denial, or discrimination was "by reason of" his disability. *See McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)) (internal quotes omitted).

Discrimination under the ADA includes a public entity's failure to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1214 n.25 (9th Cir. 2007) (because Congress authorized the Attorney General to promulgate regulations under the ADA, the regulations are given legislative weight unless "arbitrary, capricious, or plainly contrary to the statute."). When a public entity's uniformly enforced policy or program burdens a disabled person in a manner different from and greater than non-disabled persons, and the entity fails to reasonably accommodate the disability, the entity discriminates against the disabled person "by reason of" his disability. *McGary*, 386 F.3d at 1265.

The State neither challenges the sufficiency of Payne's allegation that he is disabled within the meaning of the ADA nor argues that Payne has failed to plead facts indicating he was qualified to receive the benefits of the prison's services and programs. Instead, it attacks the claim on grounds that (1) Payne has failed to allege that other non-disabled prisoners received the same benefits he was denied, (2) the claim is improper because it is no more than a disguised Eighth Amendment deliberate indifference claim, and (3) claims challenging medical care in prisons are not cognizable under Title II of the ADA.

The State's first argument fails for two reasons. First, it has been foreclosed by the Supreme Court. *See Olmstead v. Zimring*, 527 U.S. 581, 598 (1999) (declining to read into the ADA a requirement that non-disabled individuals received preferential

treatment); *see also McGary*, 386 F.3d at 1266. Second, as it relates specifically to Payne's ADA claim, it ignores the allegation that the State refused to reasonably modify its meal and medication practices and procedures to accommodate Payne's diabetes. When an ADA discrimination claim is predicated on denial of reasonable modifications or accommodations to the entity's practices and procedures, the plaintiff need not demonstrate that other non-disabled individuals received the same benefits he or she was denied. *McGary*, 386 F.3d at 1265-66.

The State's second argument is unsupported. This Court is aware of no authority indicating that a plaintiff is precluded from asserting an ADA reasonable accommodation claim merely because the factual allegations may support an Eighth Amendment deliberate indifference claim. Both may be asserted simultaneously. *See United States v. Georgia*, 546 U.S. 151, 157-59 (2006) (Title II of the ADA abrogates state sovereign immunity to the extent the conduct complained of actually violates the Eight Amendment right against cruel and unusual punishment). Moreover, to recover monetary damages under Title II of the ADA, proof of intentional discrimination is required. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). A plaintiff may prove intentional discrimination by establishing that the defendant was deliberately indifferent. *Id.* Therefore, if anything, Payne's references to deliberate indifference support rather than undermine his ADA claim.

The State's third argument deserves closer scrutiny. While Title II undoubtedly extends to the state prison context, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998), there is disagreement among courts as to whether and when it supports challenges to a prison's medical and nutritional services. The Seventh Circuit, in declining to recognize a plaintiff's Title II challenge to a prison's failure to accommodate his paraplegia, has held that Title II of the ADA "does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). The court emphasized that "courts have labored mightily to prevent the transformation of the Eighth

Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners." *Id.*

Several district courts, relying on *Bryant* and other cases citing *Bryant*, have similarly declined to recognize Title II claims challenging inadequate medical care. *See, e.g., Farid v. Demars*, No. 06-CV-1545 (TJM/GJD), 2009 WL 455450, at *4-5, 2009 U.S. Dist. LEXIS 13949, at * 13-14 (N.D.N.Y. Feb. 23, 2009) (declining to apply Title II to a plaintiff's reasonable accommodations claim that prison officials denied him low-sugar food items); *Rosado v. Alameida*, No. 03CV1110J (LSP), 2005 WL 892120, at *2, 2005 U.S. Dist. LEXIS 3341, at *6-7 (S.D. Cal. Feb. 9, 2005) (declining to apply Title II to a plaintiff's claim that prison officials failed to have him evaluated for a liver transplant, failed to place him on the liver transplant list, and failed to provide him with a modified diet); *Olson v. Meyers*, No. 01 C 50023, 2004 WL 1280353, at *2, 2004 U.S. Dist. LEXIS 10440, at *6 (N.D. Ill. June 7, 2004) (declining to apply Title II to a plaintiff's claim that a prison official denied him a diabetic snack on one occasion and insulin on another).

However, subsequent Supreme Court authority suggests the ADA supports claims alleging failure to accommodate disability-related needs in the provision of medical services where the failure is deliberate. In *Yeskey*, the Supreme Court expressly noted that the phrase "services, programs, or activities of a public entity" in 42 U.S.C. § 12132 encompasses medical services offered in prisons. 524 U.S. at 210. In a more recent decision on the constitutionality of Title II's abrogation of state sovereign immunity, the Supreme Court stated, in dictum, that "it is quite plausible that the alleged *deliberate refusal* of prison officials to accommodate . . . disability-related needs in such fundamentals as . . . medical care" constitutes exclusion from or denial of the benefits of the prison's "services, programs, or activities" for purposes of Title II of the ADA. *Georgia*, 546 U.S. at 157 (citing *Yeskey*, 524 U.S. at 210) (emphasis added).

Since *Georgia*, the First Circuit has recognized a Title II challenge to medical care in a prison setting. *See Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274 (1st Cir.

2006).  Relying on *Georgia*, the court acknowledged that "[m]edical care is one of the 'services, programs, or activities' covered by the ADA" but also noted that courts have "differentiated ADA claims based on negligent medical care from those based on discriminatory medical care."  *Id.* at 284.  Where the challenged care is "simply a reasoned medical judgment with which the patient disagreed," state medical malpractice law rather than the ADA is the appropriate vehicle in which to bring a claim.  *Id.* at 285.  However, where the challenged practice constitutes "outright denial of medical services," an ADA claim may lie.  *Id.* at 287.  Under those principles, the plaintiff's challenge to the prison's diagnosis and treatment of his amyotrophic lateral sclerosis was not cognizable under Title II of the ADA.  *Id.* at 284-85.  However, his challenge to corrections officers' denial of access to his prescription medications was cognizable.  *Id.* at 286-87.

At least one district court has taken a similar approach.  *See Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1241-42 (D. Colo. 2009).  In *Hughes*, the plaintiff alleged that the Colorado Department of Corrections violated Title II of the ADA by denying him access to medical treatment for his mental disability.  *Id.* at 1241.  After acknowledging *Georgia*'s dictum and the different treatment accorded challenges to negligent medical care and challenges to outright denial of medical care, the court found the plaintiff's allegations sufficient to state a claim under Title II of the ADA.  *Id.* at 1241-42.

This Court finds that approach persuasive.  Therefore, where a plaintiff's factual allegations paint a picture of mere negligence in the provision of medical services, a Title II ADA claim cannot lie.  On the other hand, where they indicate an outright and deliberate denial or refusal of access to medical care for a qualifying disability, a plaintiff may proceed under Title II.  Here the factual allegations are insufficient because they do no more than state a claim for negligence.  That the State initially failed to diagnose Payne's diabetes amounts to no more than a negligent medical judgment.  Furthermore, that Payne received any glucose tablets, insulin, and food, albeit sporadically, indicates that there was no outright and deliberate denial of access to care.  Finally, the State's

"denial" of a diabetic meal card does not state a claim absent some indication that the denial was deliberate and intentional. However, because this last deficiency may be cured, the Complaint will be dismissed with leave to amend. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (court should grant leave to amend unless the pleading cannot be cured by the allegation of other facts).

IT IS THEREFORE ORDERED that the State's Motion to Dismiss II (doc. # 89), treated as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), is granted.

IT IS FURTHER ORDERED that the Complaint is dismissed with leave to amend by May 10, 2010. If no amended complaint is filed by May 10, 2010, the Clerk shall enter judgment dismissing this action with prejudice as to all Defendants.

DATED this 26th day of April, 2010.

_____
Neil V. Wake
United States District Judge