**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Payne,<br><br>                    Plaintiff,<br><br>vs.<br><br>State of Arizona, et al.,<br><br>                    Defendants. | No. CV 09-01195-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant State of Arizona's Motion for Summary Judgment (Doc. 187).  For the following reasons, the motion for summary judgment will be granted in part and denied in part.

## I.    LEGAL STANDARD

Summary judgment should be granted if the evidence shows there is no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing that material facts are not genuinely disputed.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.  *Id.* at 325. When the moving party has carried its burden under Rule 56(c), the nonmoving party must show that there are genuine issues of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A material fact is one that might affect the outcome of the suit under the governing law.  *Id.* at 248.  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*   The

nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 586.

On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). But the evidence presented by the parties must be admissible or able to be produced in admissible form. *See* Fed. R. Civ. P. 56(c)(2). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## II.    FACTS PRESUMED TRUE FOR SUMMARY JUDGMENT

Plaintiff claims that he was denied access to medical treatment for his diabetes during his incarceration by the Arizona Department of Corrections. The following facts and plausible inferences therefrom are taken in the light most favorable to Plaintiff, the non-moving party. *See Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

In 1983, Plaintiff was diagnosed with Type I diabetes, a chronic disease that qualifies as a disability under the Americans with Disabilities Act of 1990. As a diabetic, Plaintiff requires a consistent insulin dosage and food regimen to maintain a healthy blood-sugar level. This includes a particular dosage of insulin and the opportunity to eat a special diet. Short-term failure to maintain a healthy blood-sugar level causes Plaintiff to experience severe hypoglycemic and hyperglycemic episodes, during which he lapses into states of incoherence or even unconsciousness. Long-term failure to maintain a

healthy blood-sugar level can cause severe and permanent physical deterioration and disability.  Prior to his incarceration, Plaintiff's diabetes was under control, he had no evidence of any neuropathic or other diabetic complications, and he was generally able to live a normal life.

Plaintiff was incarcerated in the Arizona State Prison Complex in Florence, Arizona in May 2002, where he remained until September 2002.  In September 2003, he received a second sentence based on the incident that resulted in his first sentence, and was again incarcerated in the Florence prison facility, where he remained until his release in September 2007.   Upon his incarceration, Plaintiff was medically screened and prescribed a variety of treatments and accommodations for his diabetes.   Defendant's policies acknowledge that diabetes is a chronic condition that requires regular treatment. While Plaintiff often received his prescribed treatments, including twice-daily blood sugar checks, insulin treatments, and diabetic meals, Plaintiff was on many occasions denied access to his prescribed treatments.  Plaintiff was prescribed a diabetic diet and was issued a diabetic meal card in order to allow him to obtain special diabetic meals, but he was denied access to his meal card from July 2004 to June 2005, approximately eleven months.  Defendant's delay in providing Plaintiff access to his medically prescribed meal card is unexplained, even though Plaintiff repeatedly requested a replacement diabetic meal card.

As a result of not having his meal card, Plaintiff was often denied access to diabetic meals and other snacks, including instances where officers confiscated diabetic snacks Plaintiff had received before he could eat them.   Defendant's requests for prescribed glucose tablets were often unmet due to lack of supply and when he did receive them, the dosage was usually insufficient.  As a result of these denials of access to prescribed treatment, Plaintiff's blood sugar level was often outside medically acceptable ranges, as reflected in Defendant's medical records for Plaintiff.   He often suffered severe hypoglycemic and hyperglycemic episodes, during which he experienced incoherence or sometimes even unconsciousness.  He was denied a pass to receive care in

the medical unit to receive treatment on at least ten occasions, and he was found unconscious on at least five occasions.

Plaintiff was also denied access to other aspects of medical care. Prior to his incarceration, Plaintiff utilized an insulin pump to manage his diabetes. Plaintiff's ex-wife attempted to deliver his insulin pump to the prison, but prison officials did not allow Plaintiff to use the insulin pump. Defendant did not prescribe an insulin pump as part of Plaintiff's treatment, and Plaintiff never utilized an insulin pump while incarcerated. Plaintiff was prescribed twice-daily blood sugar checks, but was often only permitted to check his blood sugar once a day or not at all. Plaintiff was also prescribed daily insulin treatments, but was at times denied access to these treatments. The extent and frequency to which Plaintiff was denied treatment is unclear due to gaps and inaccuracies in prison medical records. However, Defendant's medical records for Plaintiff acknowledge that Plaintiff's diabetes was on occasion not controlled. Plaintiff complained about the denial of access to medical treatment on several occasions and filed multiple grievances.

During his incarceration, Plaintiff developed serious diabetic health problems, including hypoglycemic episodes, hypoglycemic unawareness, episodes of unconsciousness, and neuropathy. Plaintiff currently suffers from numerous diabetic health problems, including seizures, chronic nausea, gastroparesis, hypertension, elevated body temperature, difficulty communicating, sexual dysfunction, diabetic retinopathy, dysphasia, constant weakness, and possible stroke. Plaintiff's inability to maintain his blood-sugar levels during his incarceration contributed to the development of these conditions.

### III. ANALYSIS

Plaintiff's sole claim for relief is based on the allegation that Defendant failed to reasonably accommodate his disability while incarcerated by the Arizona Department of Corrections over two separate terms: in 2002 and from 2004 to 2007. Defendant has moved for summary judgment on four issues: (1) whether Plaintiff has sufficient evidence to establish a prima facie case that his rights under the ADA were violated; (2)

whether any claims related to Plaintiff's first period of incarceration are time-barred; and (3) whether Plaintiff is permitted to seek punitive damages; and (4) whether Plaintiff disclosed sufficient evidence to support his claims for economic damages.

### A.    Violation of Rights under the ADA

Plaintiff's claim arises under Title II of the Americans with Disabilities Act (hereinafter "ADA"), which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132 (2007).  To establish violation of Title II of ADA, a plaintiff must show that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)).  The ADA authorizes suits by private citizens for money damages against public entities, *Unites States v. Georgia*, 546 U.S. 151, 153 (2006), and Title II of the ADA "unmistakably includes state prisons" as covered public entities.  *Pennsylvania Dept. of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998).  Further, medical care is "one of the 'services, programs, or activities' covered by the ADA."  *Kiman v. N.H. Dept. of Corrs.*, 451 F.3d 274, 284 (1st Cir. 2006). The "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as . . . medical care . . . constitutes exclusion from participation in or . . . denial of the benefits of the prison's services, programs, or activities."  *Georgia,* 546 U.S. at 157.

While evidence of discriminatory medical care can constitute a claim under the ADA, claims based solely on provision of inadequate or negligent medical care are not cognizable under the ADA. *See Simmons*, 609 F.3d at 1021-22 ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1997) ("The ADA does not create a remedy for medical malpractice."); *Marlor v. Madison Cty., Idaho*, 50 F. App'x 872, 873 (9th Cir. 2002) ("Inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld *by reason of* a disability."). However, a Plaintiff may have a valid claim under the ADA where he can show that Defendant "discriminated against [him] because of his [disability], not by providing him with inadequate care, but by denying him immediate access to prescribed medications[.]" *McNally v. Prison Health Servs.*, 46 F. Supp. 2d. 49, 58-59 (D. Me. 1999).

Further, "[t]o recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). To establish intentional discrimination under the ADA, the plaintiff must show the defendant acted with "deliberate indifference." *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139. In the ADA context, a Plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the State failed to provide" and show that Defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 1140.

Defendant argues that Plaintiff cannot make out a claim under the ADA for several reasons: first, Plaintiff cannot prove he is a qualified individual with a disability under the ADA; second, Plaintiff cannot prove he was excluded from participation in programs or denied services by reason of his disability; and third, Plaintiff has not produced admissible evidence showing Defendant was deliberately indifferent to Plaintiff's medical needs. In the alternative, Defendant argues Plaintiff's claims related

to his 2002 incarceration in the Arizona Department of Corrections are time-barred under the applicable two-year statute of limitations.

### 1.    Status as Qualified Disabled Individual

Title II of the ADA[1] defines a disability as

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (c) being regarded as having such an impairment.

42 U.S.C. § 2102(1) (2007).  Defendant does not dispute that diabetes is a "physical impairment under the ADA because it is a physical condition affecting the digestive, hemic and endocrine systems[,]" nor that "major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003); *see also Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) ("[E]ating is a 'major life activity.'") (quoting *Fraser*, 342 F.3d at 1038).  Rather, Defendant claims that Plaintiff has failed to establish that his diabetes substantially impaired any of his major life activities.

Whether Plaintiff's diabetes substantially limits any major life activity is an "individualized inquiry." *Fraser*, 342 F.3d at 1039.  Defendant relies on general propositions that a diagnosis of Type I diabetes in itself is insufficient to constitute a disability under the ADA and that mitigating measures must be considered when determining whether an impairment substantially limits a major life activity.  However, Defendant has not tied these assertions to any facts specific to Plaintiff and has failed to account for the limitations imposed by Plaintiff's required care itself.  *Id.* (noting "the

---

[1] The ADA Amendments Act, which came into effect on January 1, 2009, does not retroactively apply to Plaintiff's claims, which cover actions taken from 2002 to 2007. *See Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009).  The Court will accordingly conduct its analysis using the former version of the ADA.

side effects of [any] mitigating measure" should not be overlooked as mitigating measures "can also be impairing"); *see also Rohr*, 555 F.3d at 859 (finding genuine issue of material fact as to whether Type II diabetic's condition and care regimen qualified him as a disabled individual and stating "[i]t is simply no answer to say that 'if [Plaintiff] strictly controls his diet' he is not substantially limited; for [Plaintiff], the effort required to control his diet is itself substantially limiting"). Further, Defendant's suggestion that "before both of Plaintiff's incarcerations" his diabetes "when properly controlled, did not prohibit him from participating in any major life activities" (Doc. 187 at 8) does not establish that his condition during his second incarceration, the relevant time period for Plaintiff's claim, was not sufficiently limiting. [2]

Plaintiff has done more than simply assert that his diagnosis qualifies him as a disabled individual under the ADA. Rather, Plaintiff states that his "diabetes regimen was perpetual, restrictive and demanding." (Doc. 209 at 15.) To manage his condition, Plaintiff needed to test his blood sugar levels throughout the day and carefully control his diet, both in terms of the type and frequency of his meals. A "brittle diabetic's burden of a perpetual treatment regime demanding a careful balance of blood sugar, food intake, and activity levels" can be enough to qualify as a substantial limitation on the major life activity of eating. *Rohr*, 555 F.3d at 859. Plaintiff's severely fluctuating blood sugar levels during his incarceration, coupled with his multiple hypoglycemic and hyperglycemic episodes, also suggest that any corrective measures or treatment failed to reduce Plaintiff's condition to one that was not substantially limiting. (*See, e.g.*, Doc. 209 at 14-15.) At the summary judgment stage, "comparative or medical evidence" is not required to establish a genuine issue of material fact regarding whether an individual's

---

[2] While Defendant's motion for summary judgment does not limit this argument to a particular period of incarceration, Defendant's reply in support of its motion for summary judgment indicates that this argument applies primarily to Plaintiff's status during his first incarceration. As the Court agrees that Plaintiff's claims related to his first incarceration are time-barred, it is unnecessary to decide the extent to which Plaintiff's diabetes substantially limited his major life activities prior to his second incarceration.

impairment substantially limits a major life activity.  *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005).  Rather, "a plaintiff's testimony may suffice to establish a genuine issue of material fact" regarding the extent of a limitation on a major life activity.  *Id.*  Plaintiff's testimony, coupled with Defendant's own diagnosis and treatment of Plaintiff's diabetes showing he was regarded as having an impairment, are sufficient to establish, at a minimum, a disputed issue of material fact as to whether Plaintiff's Type I diabetes substantially limited one or more of his major life activities—such as eating or caring for himself—during his incarceration.  Defendant's motion for summary judgment on this issue will therefore be denied.

## 2.      Denial of Medical Services by Reason of Disability

Plaintiff claims Defendant has violated his rights under the ADA because it "repeatedly and deliberately denied [Plaintiff] access to prescribed, medically necessary foods and medicines[.]"  (Doc. 212 at 12.)  Defendant argues that Plaintiff cannot maintain his ADA claim because he only alleges inadequate or negligent medical treatment, not discriminatory denial of care.  Defendant claims there is no genuine issue of material fact regarding whether the denial of treatment was deliberate and intentional or simply negligent, as Defendant claims.  The issue before the Court is thus whether there is a disputed issue of material fact with respect to whether Plaintiff's claims more properly allege a denial of access to medical treatment or simply inadequate or negligent medical care.

The fact that Defendant provided Plaintiff some medical care does not dispositively preclude Plaintiff from sustaining a claim under Title II of the ADA.  *See Kiman*, 451 F.3d at 284-90 (reversing grant of summary judgment to defendant where plaintiff sometimes received prescribed medications but was on other occasions denied access to medical services).  Rather, whether and when the ADA supports claims by prisoners regarding a prison's medical and nutritional services is a close question that turns on distinguishing actionable claims of "denial of medical treatment" from non-actionable claims of mere inadequate or negligent medical treatment.  *See id.* at 284

- 9 -

1    (noting courts have "differentiated ADA claims based on negligent medical care from

2    those based on discriminatory medical care").  Many courts have held that inadequate

3    treatment for an individual's medical conditions does not provide a basis for a liability

4    under the ADA.  *See, e.g.*, *Bryant*, 84 F.3d at 249 ("The ADA does not create a remedy

5    for medical malpractice."); *Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir.2005)

6    (medical treatment decisions not a basis for ADA claims); *Fitzgerald v. Corr. Corp. of

7    Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within scope

8    of ADA); *Tannenbaum v. Arizona*, 2008 WL 2789589 at *11 (D. Ariz. 2008) (finding no

9    claim under the ADA where plaintiff never alleged that he did not receive treatment

10   because of his disability, but only claimed that "Defendants refused to provide [plaintiff]

11   with his desired treatment and thereby denied him adequate medical care").  However,

12   other courts have held that there can be a claim under the ADA when an individual was

13   deliberately denied of access to medical treatment.  *See, e.g.*, *Georgia*, 546 U.S. at 157

14   (citing *Yeskey*, 524 U.S. at 210) (noting "the alleged deliberate refusal of prison officials

15   to accommodate . . . disability-related needs in such fundamentals as . . . medical care"

16   could constitute exclusion from or denial of the benefits of the prison's "services,

17   programs, or activities" for purposes of Title II of the ADA); *Kiman*, 451 F.3d 274;

18   *Hughes v. Colo. Dep't of Corrs.*, 594 F.Supp.2d 1226 (D. Colo. 2009); *Tandel v. Cnty. of

19   Sacramento*, 2012 WL 602981 at *22-24 (E.D. Cal. 2012).  Courts have accordingly

20   attempted to draw the line "between claims asserted under the ADA that allege that the

21   medical treatment that a plaintiff received or had access to was inadequate, versus claims

22   alleging that a plaintiff was discriminatorily precluded from access to medical treatment

23   altogether."  *Hughes*, 594 F. Supp. 2d at 1241.

24         This first category of non-cognizable claims most fairly encompasses "claims that

25   actually resemble medical malpractice claims because the prisoner challenges the *course

26   of treatment* that was selected."  *Id.* (citing *Fitzgerald*, 403 F.3d at 1137) (emphasis

27   added); *see also Mahoney v. Hammond*, 2010 WL 2720759 (E.D. Wash. 2010) (rejecting

28   ADA claim where Plaintiff challenged denial of preferred prescription for particular

chronic pain medication).  The latter category of cognizable claims can be said to encompass claims that a prisoner was actually denied treatment that had been prescribed to him without any legitimate, non-discriminatory reason.  *See, e.g.*, *McNally*, 46 F. Supp 2d. at 58-59 (finding the plaintiff stated an ADA claim by alleging the jail "discriminated against [him] because of his [disability], not by providing him with inadequate care, but by denying him immediate access to prescribed medications, a service provided to detainees in need of prescriptions for other illnesses"); *see also Kiman*, 451 F.3d at 284-90.  Courts have generally found no claim under the ADA where an individual's allegations amount to little more than a difference of opinion regarding the proper scope of treatment or where an individual complains that he was not prescribed a particular course of preferred treatment – not in circumstances where the evidence shows a defendant's unexplained failure to properly provide access to already prescribed medical treatment.  *See, e.g.*, *O'Guinn v. Lovelock Corr. Ctr.*, 2010 WL 4395442 at *4 (D. Nev. 2010) (collecting cases and noting the "inapplicability of the ADA . . . to medical decisions"); *Mahoney*, 2010 WL 2720759 at *2 (noting allegation of discrimination was insufficient to state an ADA claim because Plaintiff did "not allege he was denied prescribed medications" and only asserted "a difference in medical judgment between himself and medical professionals at state correctional facilities whether narcotic pain medication should be prescribed.").

Accordingly, the Court can draw a line between situations where an individual is simply unsatisfied with the medical decisions made regarding his treatment, which do not support an ADA claim, and situations where a plaintiff is denied access to prescribed medication, which can support an ADA claim.  *See Kiman*, 451 F.3d at 284-90 (upholding grant of summary judgment against plaintiff on claims that defendant failed to properly diagnose plaintiff's condition, prescribed inadequately low medical dosages, and denied request for cane and "early chow" pass, but finding disputed issues of fact regarding claims that plaintiff was denied routine access to prescription medicines, prescribed shower chair, prescribed front cuffing, and request to be placed in an

accessible cell). Plaintiff here is challenging more than just the type and scope of his treatment and the medical decisions made about his care, such as whether he should receive a certain type of medication, or the frequency with which his blood sugar should be checked beyond his prescribed twice-daily checks; he is also challenging Defendant's deliberate failure to provide him access to the care and treatment that was prescribed to treat his disability. Plaintiff's claims do not relate to "purely medical decisions[,]" *Fitzgerald*, 403 F.3d at 1144, and Defendant does not contend that the failure to provide access to treatment was done on the basis of a negligent *medical* judgment. Rather, Plaintiff's evidence here more closely resembles the facts of *Kiman* and *Hughes*, which found cognizable ADA claims.

As discussed above, *Kiman* held that plaintiff's challenge to the prison's diagnosis and treatment of his amyotrophic lateral sclerosis was not cognizable under Title II of the ADA, but found his challenge to corrections officers' denial of access to his prescription medications and other prescribed accommodations were cognizable. 451 F.3d at 284-87. The First Circuit reversed the district court's grant of summary judgment for defendants with respect to some of plaintiff's claims, noting that, for example,

> Kiman . . . presented evidence that he informed the defendants of the serious nature of his disability and they had acknowledged, by issuing the bottom bunk pass and cane pass, that Kiman had mobility problems that required certain accommodations. Yet, according to Kiman's deposition, corrections officers nonetheless failed to respond to his request for a lower tier or his complaint that he was being kept on a top bunk. This presents an issue of fact regarding whether the corrections officers failed to provide him with these reasonable accommodations.

*Id.* at 289-90.

Here, there are similarly genuine issues of material fact which preclude the Court from granting Defendant's motion for summary judgment. Plaintiff has established that Defendant was on notice of the serious nature of his disability—as in *Kiman*, Defendant acknowledged Plaintiff's condition by prescribing him medications and issuing him a

diabetic meal card—but that Plaintiff was nonetheless deliberately denied access to medical care in multiple areas.  Specifically, Plaintiff claims he was denied access to the following: (1) meal card and diabetic diet; (2) glucose tablets to keep on his person; (3) pass to receive care in the medical unit; (4) twice-daily blood sugar checks; (5) insulin pump; (6) insulin treatments.  Plaintiff also claims that "unreliable prison medical records obscure the denial of care[,]" suggesting that there may have been even more frequent instances of denial of care.  (Doc. 212 at 6.)

The inquiry thus turns to whether Plaintiff has marshaled sufficient facts to create at least a fair inference that Defendant discriminatorily denied him access to treatment. To establish intentional discrimination under the ADA, Plaintiff must show Defendant acted with deliberate indifference.  *See Duvall*, 260 F.3d at 1138.  In determining whether a prison acted with deliberate indifference toward a prisoner's medical needs or disability accommodations, courts often consider whether an affirmative request for accommodation was made and denied and whether the prison was aware of the seriousness of plaintiff's condition.  *See, e.g.*, *Simmons*, 609 F.3d at 1022  (finding no discrimination where "there is no evidence that [plaintiff's requested accommodation] was ever sought or denied"); *Olson v. Meyers*, 2004 WL 1280353 at *2 (N.D. Ill. 2004) (finding no deliberate indifference where there was "no evidence to support a conclusion that [defendant] was aware of the seriousness of plaintiff's condition").

For certain claims of denial of access to care, Plaintiff has not presented sufficient facts to create a genuine issue of material fact regarding whether denial of access to treatment was a result of deliberate indifference or simply negligence.  The record shows Defendant had legitimate, non-discriminatory reasons for denying Plaintiff access to certain aspects of his medical care.  *See Simmons*, 609 F.3d at 1021-22 (noting that denial of access to jail program was "not because of [plaintiff's] depression," but was due to a legitimate jail policy).  For example, with respect to the purported denial of access to prescribed glucose tablets, the only facts presented indicate that Plaintiff sometimes did not receive his glucose tablets because of Defendant's negligence in maintaining a

sufficient supply of glucose tablets.  Deliberate indifference to Plaintiff's access to this aspect of his treatment cannot fairly be inferred from these facts.  Additionally, there are insufficient facts to create a genuine dispute regarding Plaintiff's denial of access to an insulin pump.  Plaintiff has does not claim that Defendant prescribed the use of the pump and then denied Plaintiff access to it.  Further, there are insufficient facts to show Defendant ever denied a specific request by Plaintiff for the insulin pump; the record shows only that Plaintiff's ex-wife attempted to deliver the pump to the prison for Plaintiff's use.  This is not enough to raise a genuine issue of material fact as to whether the denial was by reason of Defendant's deliberate indifference.

It is a close question whether Plaintiff's denial of access to care with respect to his remaining claims was a result of deliberate indifference or simply due to negligence or bureaucratic mistakes and inefficiencies.  However, Plaintiff has proffered sufficient facts to "create a plausible inference of discriminatory denial of access to medical care," *Hughes*, 594 F. Supp. 2d at 1242, with respect to at least some aspects of his prescribed medical care.  First, Plaintiff has shown that he was prescribed a diabetic meal card but was denied access to that card for eleven months.  Plaintiff made repeated requests for a replacement meal card, which were ignored without any explanation.  Defendant was on notice of the serious need for Plaintiff to maintain regular blood sugar levels, as evidenced by issuing Plaintiff a diabetic meal plan and general standards of care for Type I diabetics.  *See Kiman*, 451 F.3d at 288 (noting "defendants acknowledged, through the issuance of a shower chair pass, [plaintiff's] serious disability-related needs").  Plaintiff was further denied access to his diabetic meal plan with respect to his diabetic snacks; prison officers are trained to know that inmates prescribed a diabetic snack need the snack to control their blood sugar levels, but Plaintiff was nonetheless deliberately deprived of his diabetic snacks on some occasions.  There are insufficient facts in the record before the Court to determinatively negate the inference that the eleven-month delay in issuing the prescribed meal card or otherwise denying Plaintiff access to a diabetic meal plan was a result of deliberate indifference to Plaintiff's medical care.  *See*

*id.* at 286-90.  Similarly, the failure to grant Plaintiff access to the medical unit in light of Defendant's knowledge that Plaintiff suffered hypoglycemic attacks and had on at least five occasions been found unconscious as a result of his condition raises sufficient issues of material fact that a grant of summary judgment on these questions are precluded.  *See Duvall*, 260 F.3d at 1140-41 (noting plaintiff "presented sufficient evidence to show deliberate indifference, and thus intentional discrimination" where there was a triable issue of fact whether defendant "had notice of [plaintiff's] need for . . . accommodation . . . and . . . failed despite repeated requests to take the necessary action.").

Of final note, to the extent Plaintiff's claims regarding the frequency of his blood sugar checks and insulin treatments are merely a disagreement about the adequacy of the treatment measures, these claims are not cognizable.  For instance, no ADA claim will lie for Defendant's decision to order twice-daily blood sugar checks on the grounds that this frequency of checks is "not as often as the American Diabetes Association recommends." (Doc. 212 at 5.)   However, Plaintiff states that Defendant only permitted Plaintiff to check his blood sugar once per day, and sometimes not at all, and that he was routinely and deliberately denied access to his prescribed insulin treatments.  While it is true that Plaintiff often did receive his prescribed medications, the denial of routine access to care still supports a claim under the ADA on these facts because it can fairly be inferred that Defendant was deliberately indifferent to Plaintiff's access to prescribed medical care. Considering Plaintiff repeatedly complained about the routine denial of access to his medical care to no avail, and that Defendant was otherwise on notice that Plaintiff's blood sugar levels were frequently at unsafe levels, and that Plaintiff had repeated hypoglycemic and hyperglycemic episodes, the facts on record are sufficient to establish Defendant's knowledge of Plaintiff's need for accommodation with twice-daily blood sugar checks and insulin treatments.   The denial of access to these treatments is unexplained by the facts presented, but a reasonable jury could dispute whether this lack of access was due simply to negligence or administrative inefficiencies or whether it was a deliberate denial of access to care.  *See Kiman*, 451 F.3d at 287 (finding genuine issue

of material fact regarding denial of routine access to prescribed medications where plaintiff had "presented evidence supporting his assertions that he was not receiving his medication on a regular basis, that he informed prison officials, and that they did not act despite his repeated requests").  At a minimum, a discriminatory intent can plausibly be inferred from the deliberate denial of access to treatment for his condition in these respects.

In light of the foregoing, the issues that remain in this case for trial are limited; the trial will not encompass a broad attack on the best practices for the treatment of diabetes in prisons or whether Defendant adhered to its own policies and procedures.  Plaintiff will not be permitted to challenge the scope of his prescribed treatment or argue that the treatment prescribed was inadequate.  Rather, Plaintiff will be limited to proving that Defendant was deliberately indifferent in denying Plaintiff access to the treatment Defendant prescribed for him as delineated above.

## B.      Statute of Limitations

Defendant claims that Plaintiff's claims related to his first incarceration are time-barred.  Because the ADA does not provide a governing statute of limitations, the Court must apply the statute of limitations of the most analogous state law.  *See, e.g.*, *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002).  This Court previously applied A.R.S. § 41-1492.08(C), the two-year statute of limitations governing the Arizonans with Disabilities Act, to Plaintiff's claims (Doc. 78 at 16).[3]  Applying this two-year statute of limitations period, the Court agrees that Plaintiff's claims related to his first incarceration are time-barred because the alleged discriminatory actions from Plaintiff's first incarceration ceased as to him upon his release.

---

[3] Defendant also argues that Arizona's two-year statute of limitations for personal injury actions, A.R.S. § 12-542, applies to bar Plaintiff's claims related to his first incarceration. Because the Court finds Plaintiff's claims are barred under the statute proffered by Plaintiff, the Court need not decide this issue.

Plaintiff filed his original complaint in this matter on June 3, 2009 (Doc. 1).  His first period of incarceration ran from May 2002 to September 2002.  As this Court previously stated, "a jail inmate experiences discriminatory medical treatment practices only for as long as he is in jail custody.  The discrimination ceases as to an individual plaintiff when that plaintiff is released from custody."  (Doc. 78 at 17.)   Any discriminatory treatment Plaintiff may have experienced during his first period of incarceration ended upon his release from prison in September 2002; accordingly, any complaint related to that period of incarceration needed to have been brought within two years after Plaintiff's release.  Because Plaintiff did not file the currently pending action until 2009, his claims related to his first incarceration are time-barred.  The Court will therefore grant summary judgment to Defendant on Plaintiff's claims related to his first incarceration.

The Court nonetheless recognizes that facts related to Plaintiff's first period of incarceration may have evidentiary value with respect to his ultimate claim for relief; for example, Defendant may rely on evidence of the extent of Plaintiff's injury during and after his first period of incarceration to attempt to limit Plaintiff's recovery.  However, the Court need not now address the admissibility of evidence from Plaintiff's first period of incarceration to support such arguments.  The effect of the grant of summary judgment in this respect is simply to rule that evidence of events from Plaintiff's first incarceration is not admissible to support a claim for relief for damages arising from Plaintiff's first period of incarceration.

A further issue related to the statute of limitations remains: to what extent Plaintiff will be able to recover damages stemming from any denial of care that occurred before June 3, 2007.  Defendant's motion for summary judgment argues only that the two-year statute of limitations bars claims related to Plaintiff's first incarceration.  It does not raise a statute of limitations argument related to any of Plaintiff's claims related to his second incarceration.  (Doc. 187 at 11-12.)  For the first time in its reply brief, Defendant raises the argument that because the denial of access to Plaintiff's meal card constitutes a

discrete act, Plaintiff had reason to know of the injury at the time it occurred and that the claim is therefore time-barred.  (Doc. 218 at 8.)  While this issue is not properly before the Court at summary judgment, *see United States v. Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir. 2000) (declining to consider an argument raised for the first time in reply brief), it will be a matter to consider when instructing the jury on damages.  It is undisputed that Plaintiff knew about the gravity and consequences of his denial of access to medical treatment as it was happening; accordingly, an instruction may be warranted that Plaintiff is only entitled to damages for harm from the injury caused by denial of access to care occurring between June 3, 2007 and his release, and any future harm directly stemming from the denial of care occurring after June 3, 2007 only.  *See Hughes*, 594 F. Supp. 2d at 1236 (applying statute of limitations and noting that plaintiff "reasonably should have known of any deficiencies" in his medical treatment "at the time that he allegedly required such services and did not receive them").

### C.    Punitive and Economic Damages

Defendant has also moved for summary judgment on Plaintiff's claim for punitive and economic damages.  Plaintiff has not disputed Defendant's contention that punitive damages are not permitted under the ADA.  *See Lovell v. Chandler*, 303 F.3d 1039, 1048 n.3 (9th Cir. 2002);  Because Plaintiff's only remaining claim is brought pursuant to the ADA, punitive damages are clearly unavailable here.  *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages may not be awarded in private suits . . . brought under . . . the ADA[.]").  Accordingly, Defendant is entitled to summary judgment on the availability of punitive damages.

With respect to Plaintiff's claim for economic damages, Defendant claims Plaintiff did not sufficiently disclose proof of his lost wages, medical expenses, and impaired future earning capacity under Fed. R. Civ. P. 26.  Defendant also challenges Plaintiff's failure to account for deductions of state and federal taxes in his economic damages calculations.

1    Under Rule 26(a)(1)(A)(iii), a party is required to provide

2        a computation of each category of damages claimed by the
3        disclosing party—who must also make available for
         inspection and copying as under Rule 34 the documents or
4        other evidentiary material, unless privileged or protected from
5        disclosure, on which each computation is based, including
         materials bearing on the nature and extent of injuries
6        suffered[.]

7    Plaintiff's disclosure regarding his computation of damages provides an "estimate" that

8    "[Plaintiff] has suffered no less than $5,800,000.00 in damages as compensation for lost

9    wages . . . pain and suffering, and future medical costs and expenses." (Doc. 187 at 14.)

10   Plaintiff also noted that the estimated lost wage calculation is based on Plaintiff's prior

11   employment at an annual salary of $84,500.00, assuming Plaintiff continued work until

12   age 65.  (*Id.*)  Defendant claims Plaintiff did not produce pay stubs, tax returns, medical

13   bills, or any other evidence to establish the amount of his lost wages or impaired future

14   earning capacity.  In response, Plaintiff disputes Defendant's characterization of his

15   disclosure and points to information that was disclosed, including proposed physician

16   testimony as well as Plaintiff's deposition on his employment history and impairment of

17   future earning capacity.  Plaintiff also claims Defendant has failed to establish any harm

18   resulting from Plaintiff's failure to disclose this information.

19       Where a party's disclosure under Fed. R. Civ. P. 26 is insufficient, that party is

20   prevented from using the information it failed to disclose in support of a motion or at trial

21   "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

22   Plaintiff has not alleged that any insufficiency in his production is substantially justified.

23   His argument that Defendant's failure to request any supplemental disclosure indicates

24   that any deficiency in the disclosure is harmless is unavailing since initial disclosures

25   under  Rule 26 are mandatory and do not necessitate a discovery request from the

26   opposing party, and because the disclosure of a "computation of damages under Rule

27   26(a)(1) is necessary for the opposing party to produce responding evidence, such as an

28

expert opinion." *In re Gorilla Cos., LLC*, 454 B.R. 115, 119-20 (D. Ariz. 2011). Nonetheless, because there is a dispute of fact regarding the sufficiency of the disclosure, Plaintiff's purported failure to provide more concrete documentation to support his economic damages claim is not best resolved at the summary judgment stage. *See Villagomes v. Lab. Corp. of America*, 783 F. Supp. 2d 1121, 1129 (D. Nev. 2011) (Plaintiff's failure to provide computation of damages was "not sufficient to support summary judgment, though it may be sufficient for a motion in limine to exclude particular evidence."). Defendant's motion for summary judgment on the availability of economic damages will thus be denied without prejudice to a renewed motion at trial challenging the sufficiency of the evidence proving economic damages. *See id.*

IT IS THEREFORE ORDERED that Defendant State of Arizona's Motion for Summary Judgment (Doc. 187) is granted to the extent that Plaintiff's claims related to his first incarceration are time-barred, no punitive damages are permitted, and with respect to Plaintiff's claims of denial of access to his insulin pump and glucose tablets, and denied as to the remaining issues.

Dated this 5th day of April, 2012.

Neil V. Wake
United States District Judge